Earle L. REYNOLDS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16689.

United States Court of Appeals
Ninth Circuit.

Dec. 29, 1960.

See also 169 F.Supp. 479, 267 F.2d 235.

Joseph L. Rauh, Jr., John Silard, Washington, D. C., for appellant (Frederick S. Wyle, San Francisco, Cal., of counsel).

J. Walter Yeagley, Asst. Atty. Gen., Louis B. Blissard, U. S. Atty., Rex S. Kuwasaki, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before ORR, BARNES and HAMLIN, Circuit Judges.

ORR, Circuit Judge.

Appellant is an anthropologist who spent several years in the early 1950's studying the effects of radiation on the survivors of the Hiroshima and Nagasaki atomic bomb blasts. In 1958 the Atomic Energy Commission was conducting a series of nuclear tests at the Eniwetok Proving Grounds in the Pacific. In connection with these tests the Commission on April 11, 1958, promulgated a regulation barring United States citizens from entering a 390,000 square mile "Danger Area" surrounding the proving grounds, except with the express approval of appropriate officials. This regulation is set out in the footnotes.[1]

---

I. The regulation reads in relevant part:
"To avoid any unnecessary delay or interruption of [the Hardtack nuclear test series to be conducted at the Eniwetok Proving Ground] and to protect the health and safety of the public, the Atomic Energy Commission is issuing the following regulations which will be effective until the Hardtack test series is completed:
"In view of the importance of these tests to the national defense, the potential hazard to the health and safety of individuals who enter the danger area, and the early starting date of the tests,

[the usual notice and public procedure are being dispensed with].
*   *   *   *   *
"Authority: §§ 112.1 to 112.4 issued under sec. 161, 68 Stat. 948, as amended; 42 U.S.C. 2201. Interpret or apply secs. 2, 3, 91, 68 Stat. 921, as amended 922, 936; 42 U.S.C. 2012, 2013, 2121. *For the purposes of sec. 223, 68 Stat. 958, 42 U.S.C. 2273, § 112.4 issued under sec. 161 i,* 68 Stat. 949, 42 U.S.C. 2201(i).
"112.1 Purpose. The regulations in this part are issued in order to permit the Atomic Energy Commission in the interest of the United States to exercise

It was purportedly issued under and authorized by § 161(i) of the Atomic Energy Act of 1954, 42 U.S.C.A. § 2201(i), which provides:

"§ 161. In the performance of its functions the Commission is authorized to—

"(i) prescribe such regulations or orders as it may deem necessary (1) to protect Restricted Data received by any person in connection with any activity authorized pursuant to this Act, (2) to guard against the loss or diversion of any special nuclear material acquired by any person pursuant to section 53 or produced by any person in connection with any activity authorized pursuant to this Act, and to prevent any use or disposition thereof which the Commission may determine to be inimical to the common defense and security, and (3) to govern any activity authorized pursuant to this Act, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property;"

Section 223 of the Atomic Energy Act of 1954, 42 U.S.C.A. § 2273, provides:

"§ 223. Whoever willfully violates, attempts to violate, or conspires to violate, any provision of this Act for which no penalty is specifically provided or of any regulation or order prescribed or issued under section 65 or subsections 161 (b), (i) or (p) shall, upon conviction thereof, be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both, except that whoever commits such an offense with intent to injure the United States or with intent to secure an advantage to any foreign nation, shall, upon conviction thereof, be punished by a fine of not more than $20,000 or by imprisonment for not more than twenty years, or both."

Appellant testified that he believed nuclear testing was creating grave dangers to the human race, that freedom of the seas and freedom of navigation on the seas were being threatened by the Commission's regulation, and that the regulation was illegal and unconstitutional. On July 2, 1958, appellant sailed his yacht, the Phoenix, into the prohibited area, after first notifying the Coast Guard that he was entering the area as a protest against nuclear testing. He was arrested and charged with violating 42 U.S.C.A. 2273 (§ 223 of the Atomic Energy Act of 1954, supra), which prohibits wilful violations of any regulation prescribed under section 161 (i) of the Act (supra). Appellant was tried and convicted in August of 1959; the trial court had theretofore refused to grant a motion for continuance in order to allow appellant's chosen counsel to represent him at the trial. Appellant was sentenced to two years imprisonment with suspension of the last eighteen months on probation. Appellant claims (1) that § 161(i) of the Atomic Energy Act of 1954 did not authorize the Atomic Energy Commission to issue the regulation heretofore set out in footnote one (supra), (2) that if it did so authorize, § 161(i) is too vague and indefinite to satisfy constitutional requirements for statutes which have criminal penalties, (3) that this regulation deprives appellant of his First and Fifth Amendment rights of peaceable protest and freedom

its authority pursuant to section 91.a of the Atomic Energy Act of 1954, as efficiently and expeditiously as possible with a minimum hazard to the health and safety of the public. [§ 91.a authorizes the Commission to produce and test atomic weapons.]

\* \* \* \* \*

"112.4 Prohibition. No United States citizen or other person who is within the scope of this part shall enter, attempt to enter or conspire to enter the danger area during the continuation of the Hardtack test series, except with the express approval of appropriate officials of the Atomic Energy Commission or the Department of Defense."

23 Fed.Reg. 2401. (Emphasis added).

of movement, (4) that appellant was denied a fair trial on the issue of wilfulness, and (5) that he was denied his right under the Sixth Amendment to be defended by the counsel of his choice. We have reached the conclusion that ground (1) is meritorious and dispositive of this appeal.

§ 161(i) authorizes the Commission to issue regulations (1) to protect Restricted Data *received by any person in connection with any activity authorized pursuant to this Act*, (2) to guard against loss or diversion of any special nuclear material *acquired by any person pursuant to § 53*, 42 U.S.C.A. § 2073 (which allows the Commission to issue licenses for the possession of special nuclear material and to distribute such material to qualified applicants) or *produced by any person in connection with any activity authorized pursuant to this Act,* and to prevent any use or disposition thereof which the Commission may determine to be inimical to the common defense and security, and (3) to govern *any activity authorized pursuant to this Act,* including standards and restrictions governing design, location and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property. The Atomic Energy Act of 1954 gives the Commission power to authorize private industry to participate in developing peaceful uses of atomic energy and to own or possess various nuclear materials and production facilities in so doing. Appellant argues that the sole purpose of § 161(i) is to allow the Commission to enact security and safety regulations to govern the private parties who are so authorized to participate in the atomic energy program. Hence it is contended that § 161(i) gives no authority to enact regulations dealing solely with the Commission's own activities, and especially not a regulation forbidding what is essentially nothing more than a trespass upon property being utilized by the Commission itself. This contention is supported by the fact that a separate trespass section was added to the Act by an amendment in 1956. § 229, 42 U.S.C.A. § 2278a. The Government takes the position that § 161(i) authorizes any and all regulations designed to protect Restricted Data, to guard against loss or misuse of special nuclear material, or to protect health and safety, in connection with *any* activity under the Atomic Energy Act, whether an activity of licensees or of the Commission itself. It further asserts that § 229 could not have applied to the situation involved here and that § 229 refers to mere trespasses per se while § 161(i) deals with those involving dangers to Restricted Data, special nuclear material, or the health and safety of the public. For a solution we resort to an examination of the 1954 Atomic Energy Act, the 1956 amendments to the Act, and their respective legislative histories.

We first notice that § 161(i) was not part of the original Atomic Energy Act. The original Atomic Energy Act was enacted in 1946; it contained provisions almost identical to § 91(a) of the 1954 Act, 42 U.S.C.A. § 2121(a), which authorizes the Commission to produce and test atomic weapons, but it contained no provision similar to § 161(i). See S.Rep. No. 1699, 83rd Cong. 2d Sess. 55, 76, U.S.Code Cong. & Adm. News 1954, p. 3456. § 161(i) originated with the 1954 Act, which was the first major overhaul of the 1946 Act. A key to the meaning of this section, then, is found in the purpose of the overhaul which produced it.

The first event leading to the passage of the Atomic Energy Act of 1954 was a message from the President of the United States to Congress on February 17, 1954. 100 Cong.Rec. 1921–1924 (1954), U.S.Code Cong. and Adm.News 1954, p. 1642. The President stated that conditions had changed since 1946 when the United States had a monopoly on the atom bomb and wanted to keep it, and that the present national interest made it desirable to amend the 1946 Act to provide for sharing of information with our allies and to provide for and encourage greater participation by private industry in the development of peaceful

uses of atomic energy, "with proper security safeguards" in both cases. 100 Cong.Rec. at 1921. Speaking of domestic development of atomic energy the President said "in this undertaking, the enterprise, initiative and competitive spirit of individuals and groups within our free economy are needed to assure the greatest efficiency and progress at the least cost to the public." 100 Cong. Rec. at 1923. He went on to say that various private corporations had shown interest in attempting to develop various types of reactors, especially if the way were open to private investment in such reactors. "In amending the law to permit such investment, care must be taken to encourage the development of this new industry in a manner as nearly normal as possible, *with careful regulation to protect the national security and the public health and safety.*" 100 Cong. Rec. at 1923 (Emphasis added). "I recommend amendments to the Atomic Energy Act which would: 1. Relax statutory restrictions against ownership or lease of fissionable material and of facilities capable of producing fissionable material. 2. *Permit private manufacture, ownership, and operation* of atomic reactors *and related activities, subject to necessary safeguards and under licensing systems administered by the Atomic Energy Commission.* 3. *Authorize the Commission to establish minimum safety and security regulations to govern the use and possession of fissionable material.* 4. Permit the Commission to supply licensees special materials and services * * * at prices estimated to compensate the Government adequately * * *. 5. Liberalize the patent provisions of the Atomic Energy Act, principally by expanding the area in which private patents can be obtained to include the production as well as utilization of fissionable material, * * *." 100 Cong.Rec. at 1923–1924. (Emphasis added).

Thus it apears that one of the two major purposes of the proposed new act was to provide for increased private partici-pation in the atomic energy program *under safeguards to be promulgated and administered by the Commission.* The job of holding hearings and submitting proposed amendments to Congress was then turned over to the Joint Committee on Atomic Energy, a permanent committee composed of both House and Senate representatives. At the very outset of the hearings the Atomic Energy Commission itself submitted to the Joint Committee proposed drafts for the new amendments, which the Commission had prepared and the White House had approved. 100 Cong.Rec. 10286–10290 (1954). Certain sections of the draft dealing with development of peacetime uses of atomic energy are important for purposes of the issue involved here:

Preamble: "Widespread participation and investment will speed the Nation's progress toward this objective [the development of industrial applications of atomic energy]. However, the continuing significance of atomic weapons for military purposes *and the unique safety problems* associated with the utilization of fissionable material *require public regulation of such participation.*"

"§ 4(c) [The Commission is authorized to enter into contracts with private parties obligating or authorizing them to produce or utilize fissionable material in facilities owned by the Commission.] Any contract entered into under this section shall contain provisions (i) * * * (2) obligating the contractor to * * * comply with all safety and security regulations which may be prescribed by the Commission."

"§ 6. Section 7 of the Atomic Energy Act of 1946, as amended is amended to read as follows:

Licenses

"§ 7. (a) Authority: In order to encourage the development and to insure the exploitation of atomic energy for peacetime purposes, the

Commission may issue licenses authorizing persons to utilize, process or produce fissionable material within or under the jurisdiction of the United States for the production of energy, scientific research and development, medical therapy, the production of byproduct materials or other similarly constructive purposes in accordance with the provisions of this section.

"(b) Issuance of licenses: The Commission is authorized to issue and renew licenses, on a nonexclusive basis, to applicants (1) * * * and (2) who are equipped to observe such security standards to guard against the loss or diversion of such material and such safety standards to protect health and to minimize danger from explosion or other hazard to life or property as the Commission may establish. * * *

"(c) *Regulation of licensed activities: The Commission is authorized and directed to issue or prescribe such regulations or orders as it may deem necessary:*

"(1) *to control the dissemination of restricted data by any person Licensed pursuant to this section in such a manner as to assure the common defense and security and to prevent access to such data by unauthorized persons.*

"(2) *to prohibit or control the production, possession, use, transfer or export of any byproduct material produced or capable of being produced incident to any activity Licensed pursuant to this section, to the extent the Commission deems the control of such material to be necessary in the interest of the common defense and security; and*

"(3) *to establish such standards and instructions governing activities Licensed pursuant to this section, including standards and instructions governing the design, location and operation of facilities used by the licensee in the conduct of such ac-tivities, as the Commission may deem necessary to protect health and to minimize danger from explosion or other hazard to life or property.*"

"§ 11. Section 16(b) of the Atomic Energy Act of 1946, as amended, is amended to read as follows:

"(b) Whoever willfully violates, attempts to violate, or conspires to violate, any provision of this act * * *, or of any regulation or order prescribed or issued under sections 4(h), 5(a) (7), 7(b) (4), *7(c)*, 10(c), or 12(a) (2) shall, upon conviction thereof, be punished by a fine of not more than $5000 or by imprisonment for not more than two years, or both, except that whoever commits such an offense with intent to injure the United States or with intent to secure an advantage to any foreign nation shall, upon conviction thereof, be punished by a fine of not more than $20,000 or by imprisonment for not more than 20 years, or both."

100 Cong.Rec. at 10287–10290. (Emphasis added.)

The above extracts form a logical, consistent pattern for carrying out the goals specified by the President in his message to Congress. Provision is made for widespread participation by private industry in developing peaceful uses of atomic energy, and at the same time each licensee is subjected to such regulations as the Commission may from time to time enact in the interests of national security and the health and safety of the public. It is apparent that the whole plan is concerned solely with the activities of private licensees, and not the activities of the Commission itself. Of particular significance is the proposed § 7(c), which would appear to be the model for § 161(i) and which clearly specifies that only the regulation of *licensees* is being provided for.

Examination of the 1954 statute eventually enacted indicates that the same

basic plan was followed there.[2] Section 2(b) says, "In permitting the property of the United States to be used by others, such use must be regulated in the national interest and in order to provide for the common defense and security and to protect the health and safety of the public." 42 U.S.C.A. § 2012(b). Sections 31, 41, 53, 63, 81, 103 and 104 [3] then follow and give the Commission power to foster private research, provide for the production of nuclear material by private parties, license private possession and use of special nuclear materials, source materials and byproduct materials, and grant widespread commercial licenses to manufacture, acquire, possess, and transfer utilization or production facilities. As to each of these activities there is some provision made to the effect that the private parties shall be subject to safety and security regulations enacted by the Commission.[4] Therefore, § 161

(b) and § 223 fall naturally into place, permitting the Commission to enact safety and security regulations to govern the activities so authorized, and making it a felony to wilfully violate such regulations. The very language of § 161(i) indicates it is only dealing with licensees, for it speaks of persons *receiving* Restricted Data or *producing* special nuclear material *pursuant* to the Act.

Thus the whole legislative history of the Atomic Energy Act of 1954 supports the conclusion that the "[activities] authorized pursuant to this Act" which § 161(i) refers to are those activities of *private industry* authorized by the Atomic Energy Commission pursuant to the powers granted to it in sections 31, 41, 53, 81, 103 and 104. The President's message set forth the goals to be attained, the Commission's draft furnished a model to work from, and the finished product accomplished those goals.[5] We

**2.** According to Senator Hickenlooper, Vice Chairman of the Joint Committee and the Senate sponsor of the Atomic Energy Act of 1954, the basic plan of the Commission's proposed draft was carried over into the bill which was presented to and enacted by Congress. "The general provisions and the general policy and theory contained in the two drafts sent to the Joint Committee by the Atomic Energy Commission have effectively been placed into the bill which we are considering now." 100 Cong.Rec. 10287 (1954).

**3.** 42 U.S.C.A. §§ 2051, 2061, 2073, 2093, 2111, 2133 and 2134.

**4.** The following are extracts from these various sections of the Act:

§ 41(b), 42 U.S.C.A. § 2061(b). "Any contract entered into under this section shall contain provisions (1) * * * (2) obligating the contractor * * * (C) to comply with all safety and security regulations which may be prescribed by the Commission."

§ 53(e), 42 U.S.C.A. § 2073(e). "Each license issued pursuant to this section shall contain and be subject to the following conditions * * * (7) special nuclear material shall be distributed only pursuant to such safety standards as may be established by rule of the Commission to protect health and to minimize danger to life or property; * * *."

§ 81, 42 U.S.C.A. § 2111. "The Commission shall not permit the distribution

of any byproduct material to any licensee, and shall recall or order the recall of any distributed material from any licensee, who is not equipped to observe or who fails to observe such safety standards to protect health as may be established by the Commission or who uses such material in violation of law or regulation of the Commission * * *."

§ 103(b), 42 U.S.C.A. § 2133(b). "The Commission shall issue such licenses on a nonexclusive basis to persons applying therefor (1) * * *; (2) who are equipped to observe and who agree to observe such safety standards to protect health and to minimize danger to life or property as the Commission may by rule establish; * * *."

§ 104(b), 42 U.S.C.A. § 2134(b). "In issuing licenses under this subsection, the Commission shall impose the minimum amount of such regulations and terms of license as will permit the Commission to fulfill its obligations under this chapter to promote the common defense and security and to protect the health and safety of the public * * *."

**5.** Commissioner Henry D. Smyth of the Atomic Energy Commission, testifying before the Joint Committee on Atomic Energy on June 2, 1954, said:

"The President also recommended changes designed to encourage private participation in this country in the development of peaceful industrial applications of atomic energy. The important

find nothing to indicate that § 161(i) was meant to apply in any way to the Commission's own activities or to give the Commission power to prohibit unauthorized entry into a huge area being used as a testing ground by the Commission itself, with felony sanctions for violating such an order.

During the course of the Joint Committee hearings on the 1954 Act, the Commission submitted nine additional proposals of provisions to be included in the Act, but only six of these were adopted. See Hearings on S. 3323 and H.R. 8862 Before the Joint Committee on Atomic Energy, 83rd Cong. 2d Sess. 608–613 (1954). One of those not adopted was a proposal making it a *misdemeanor* to trespass or introduce weapons upon restricted Commission property. Testifying before the Joint Committee in regard thereto, Commissioner E. M. Zuckert said:

> "We also proposed an amendment which would make it a misdemeanor to trespass upon any Commission property that the Commission by regulation has designated as a restricted area, or to introduce weapons, explosives, or other dangerous items onto any Commission property that the Commission by regulation has designated as a prohibited area. Notice of such regulations

would have to be conspicuously and appropriately posted.

> "This proposal is designed to supplement, from the security standpoint, other Federal statutes protecting against espionage, sabotage, or depredation of Government property. It would give the Commission useful standby authority *that it does not now have* for dealing with these types of problems. For example, it would be quite useful in furnishing a *sound legal basis for prosecuting trespassers on Commission property* in the absence of any Federal trespass statute of general applicability." Ibid. at 612. (Emphasis added).[6]

Later on in the hearing Representative Van Zandt inquired whether this amendment stemmed from an earlier incident in which someone had trespassed upon an A.E.C. installation and the Commission had been unable to prosecute him. Counsel for the Commission replied that this amendment would apply to such a situation and give the Commission authority to prosecute such an individual, assuming appropriate security regulations barring such a trespass had been enacted.[7]

The trespass amendment was not adopted in 1954 with the other provisions of the Act, but the Commission

---

components of legislation in this area are (1) authority for private manufacture, ownership and operation of facilities producing or utilizing fissionable material, under necessary safeguards and licensing systems administered by the Atomic Energy Commission, (2) authority to make fissionable material available for private use, subject to appropriate safety and security regulations, and (3) liberalization of the patent provisions of the act. The pending bills would carry out the basic objectives of the President's message in this area." Hearings on S. 3323 and H.R. 8862 Before the Joint Committee on Atomic Energy, 83rd Cong., 2d Sess. 563 (1954).

6. Earlier in the hearing the Commission had testified in favor of § 161(i). Ibid at 601. This indicates that the Commission thought that the two sections were independent and that both were necessary.

7. The following is the exchange referred to:

> "Rep. Van Zandt: Does this amendment concern the experience the Commission had a year or so ago when someone deliberately entered an AEC installation and the Commission found themselves without the authority to prosecute?

> "Mr. Strauss: Mr. Van Zandt, may I ask the General Counsel to reply to that?

> "Mr. Price: Mr. Van Zandt, I think it would relate to that kind of a situation.

> "Rep. Van Zandt: In other words, the language of this amendment would give to the AEC the necessary authority to prosecute such an individual?

> "Mr. Price: Under appropriate security regulations governing entering the security areas of these facilities."

> Ibid. at 670.

continued to request it, and in 1956 the following new § 229 was enacted, along with several other amendments to the Atomic Energy Act of 1954:

"Sec. 229. Trespass Upon Commission Installations.—

"a. The Commission is authorized to issue regulations relating to the entry upon or carrying, transporting, or otherwise introducing or causing to be intoduced any dangerous weapon, explosive, or other dangerous instrument or material *likely to produce substantial injury or damage to persons or property,* into or upon any facility, installation, or real property subject to the jurisdiction, administration, or in the custody of the Commission. Every such regulation of the Commission shall be posted conspicuously at the location involved.

"b. Whoever shall *willfully* violate any regulation of the Commission issued pursuant to subsection (a.) shall, upon conviction thereof, be *punishable by a fine of not more than $1,000.*

"c. Whoever shall willfully violate any regulation of the Commission issued pursuant to subsection (a.) with respect to any installation or other property which is enclosed by a fence, wall, floor, roof, or other structural barrier shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not to exceed $5000 or to imprisonment for not more than one year, or both."

Public Law 84–1006, sec. 6, 70 Stat. 1070, 42 U.S.C.A. § 2278a. (Emphasis added.)

The Senate Report accompanying this amendment contains the following statement:

"Section 6 amends the enforcement chapter of the Atomic Energy Act of 1954 to provide two new criminal sections: Section 229—Trespass Upon Commission Installations; * * *. Under section 229, the Commission is given specific authority to issue regulations relating to the entry upon or carrying, transporting or introducing any dangerous weapon or material into or upon any facility or installation subject to the administration, jurisdiction, or in the custody of the Commission. * * * This authority is not intended to be used at residential or commercial lands sites, but only at sites which are directly employed by the Commission in the atomic energy program." S.Rep.No.2530, 84th Cong., 2d Sess. 2 (1956), U.S.Code Cong. & Adm.News, p. 4427.

The report proceeds to adopt the statement presented by the Commission during the 1954 hearings to the effect that this amendment gives the Commission power it does not now have for dealing with such things as trespass upon Commission property.[8] It goes on to say:

"The Commission has sought these trespassing and photographing amendments in previous sessions of Congress. The most recent request was in 1954 when these items were included in the miscellaneous amendments that the Commission asked to be included in the 1954 bill. In the 1954 hearings the Commission stated that it held no special brief for including the trespassing and photographing amendments in the 1954

---

8. The report states:

"This proposal is designed to supplement, from the security viewpoint, other Federal statutes protecting against espionage, sabotage, or depredation of Government property. It would give the Commission useful standby authority *that it does not now have* for dealing with these types of problems. For example, it

would be quite useful in furnishing a sound legal basis for prosecuting trespassers on Commission property in the absence of any Federal trespass statute of general applicability." S.Rep. No. 2530, 84th Cong., 2d Sess. 5 (1956), U.S.Code Cong. & Adm.News, p. 4430. (Emphasis added.)

bill if the result could be achieved by amending other statutes, but expressed the hope that their substance could be incorporated in legislation during that session of Congress. *The amendments were not included in the bill, and no other legislation was adopted that took care of the Commission request."* S.Rep.No.2530, 84th Cong., 2d Sess. 5 (1956), U.S.Code Cong. & Adm. News 1956, p. 4431. (Emphasis added.)

Thus in 1956, two years after the enactment of the 1954 Act and § 161(i), there was enacted an amendment granting the Commission power to deal with trespasses, accompanied by a Congressional statement that nothing then existed which did so. The Government argues that this amendment was only intended to deal with simple trespasses per se while § 161(i) deals with those involving dangers to health or security. Two considerations refute this: (1) Health and security, interpreted broadly as the Government would have us do (despite all the contrary indications previously discussed), could be applied to cover almost every trespass upon Commission installations, thereby making § 229 unnecessary. (2) The very wording of § 229 refutes the Government's contention: (a) It speaks of weapons or materials "likely to produce substantial injury or damage to persons or property." (b) It only applies to "restricted" areas and it provides a greater penalty for trespasses within enclosed areas, where dangers to safety and security would normally be greater.

Finally, to interpret sections 161(i) and 229 as the Government argues would create a situation where the introduction of dangerous weapons or explosives upon unenclosed Commission property, thereby endangering the lives and safety of many people, would only be a misdemeanor subject to a $1000 fine, while the mere entry upon such an area, with danger only to the trespasser, would be a felony and subject the offender to two years' imprisonment! Surely Congress cannot be deemed to have created such an anomaly.[9] Conversely, our interpretation of sections 229 and 161(i) leads to a logical result: § 229 deals with all trespasses and makes them all misdemeanors (except, of course, those falling within other Federal statutes protecting against espionage, sabotage, and depredation of Government property). § 161(i) deals with licensees who are authorized to handle and utilize facilities and materials potentially capable of causing disasters to public safety and security; it gives the Atomic Energy Commission power to regulate such licensees in the national interest and, in conjunction with § 223, it makes wilful violations of such regulations a felony.

We conclude that when appellant sailed his ship into the Eniwetok testing grounds, he committed no more than a "trespass" upon grounds being used by the Commission.[10] The legislative history of the Atomic Energy Act of 1954 and the 1956 amendments thereto make it clear that § 161(i) did not authorize a regulation barring such a trespass and thereby making it a felony. The 1954 Act was designed to increase private participation in this nation's atomic energy program, and § 161(i) was designed to allow Commission regulation of that private activity. The Act contained no provision for dealing with trespassers on Commission property except § 161(q),

---

9. The Government argues that § 229 could not have been applied to the particular situation involved in the present case because § 229 is limited to properties owned or leased by the Commission, which doesn't include the 390,000 square miles of ocean involved here. Whether this is true is beyond the scope of this opinion, but it seems clear that Congress could not have intended to make trespass upon property owned or leased by the Commission a misdemeanor but trespass upon property merely being used by it a felony.

10. The Government has at no time questioned Dr. Reynolds' motivation or charged that he was attempting to steal nuclear materials or impair national security in any other way than by postponing the tests.

a catch-all provision allowing the Commission to make such rules and regulations as might be necessary to carry out the purposes of the Act,[11] and § 161(q) had no criminal sanction attached to it. This situation was rectified in 1956 by the addition of § 229 making such trespasses misdemeanors.

The regulation appellant was convicted of violating was not authorized by the statute under which it was purportedly issued and was therefore invalid. It follows that the conviction of appellant thereunder is without legal authority and it must be set aside and the judgment reversed.

Reversed.

---

11. "§ 161. In the performance of its functions the Commission is authorized to
"q. make, promulgate, issue, rescind, and amend such rules and regulations as may be necessary to carry out the purposes of this Act."
42 U.S.C.A. § 2201(q).