Lillian M. REIS

v.

**UNITED STATES MARSHAL FOR the UNITED STATES DISTRICT COURT FOR the EASTERN DISTRICT OF PENNSYLVANIA.**

Crim. No. M–2251.

United States District Court
E. D. Pennsylvania.
March 9, 1961.

John Patrick Walsh, Philadelphia, Pa., for petitioner.

Walter E. Alessandroni, U. S. Atty. for the E. D. of Pa., Philadelphia, Pa., for respondent.

WOOD, District Judge.

The peculiar nature of this case requires some elaboration of the facts giving rise to the issue to be determined. Furthermore, if we are correct in our conclusions herein, they may serve as a guide in future cases, both as a summary of the law involved and as a commentary on the futility of prosecutors' use of overlapping jurisdictional procedures.

Lillian Reis was arrested without a warrant in Philadelphia at 11:30 p. m., on February 18, 1961, (a Saturday night). She was taken before the United States Commissioner for the Eastern District of Pennsylvania, and was ordered by him to be held in custody under $25,000 bail until the following Monday, February 20. The delay was to allow the Government to obtain from the United States Commissioner for the State of New Jersey the warrant which he had issued for Mrs. Reis' arrest on the charge of having left New Jersey with the intent of avoiding prosecution for murder. On February 20, a hearing was

held before the United States Commissioner for the Eastern District of Pennsylvania. The Government produced the warrant charging Mrs. Reis with violation of Title 18, § 1073 of the United States Code.[1] At the request of the attorney for the Government, the case was continued on the ground that the Grand Jury for the State of New Jersey had not had an opportunity to meet and to return a bill, but that an indictment for murder would soon be forthcoming. The Commissioner reduced the bail to $10,000, and Mrs. Reis posted bond and was released.

On February 24, the hearing before the Commissioner was finally held, and as a result, the Commissioner found probable cause to believe that the relator had violated Title 18, § 1073 of the United States Code and ordered her held for the United States District Court in New Jersey to answer the Federal charge. As soon as the Commissioner announced his decision, relator's counsel presented this Court with a rule to show cause why a writ of habeas corpus should not be issued against the United States Marshal directing him to release Lillian Reis from custody. The grounds for issuing the writ were stated in the rule as follows:

"That said imprisonment and restraint are illegal and their illegality consists of the following: That the evidence before the Honorable Edward W. Furia, United States Commissioner for the Eastern District of Pennsylvania, * * * was insufficient to justify the Commissioner in finding that the crime charged or any crime had been committed, and that there was reasonable cause to believe your petitioner guilty thereof, and insufficient to justify the Commissioner in holding your petitioner to answer the said charge."

Upon being presented with this rule we fixed February 28, 1961, as the date for a hearing and directed that the relator be released on $10,000 bail pending that hearing.

But as soon as Mrs. Reis left the Court House she was taken into custody by officers of the Philadelphia Police Department acting in concert with officers from the State of New Jersey on a State fugitive warrant based on the New Jersey murder indictment. She was taken before a magistrate and held without bail. This is a clear indication that at the very moment that she was in the custody of the Federal authorities in Philadelphia there was an adequate State procedure to assure the presence of the relator before the State authorities in New Jersey to answer to the charge of murder. Of course, these facts do not appear in the record of the proceedings before the United States Commissioner but we mention them merely to show the adequacy of the State remedy in this particular case.

After considering the rule and arguments of counsel thereon, we conceived it to be our duty under these circumstances to review the hearing before the Commissioner to the extent of ascertaining whether he applied the correct legal principles to the evidence there presented in reaching his conclusions, and furthermore, to determine whether there was any evidence presented by the Government from which the Commissioner could reasonably find probable cause.

■ At the hearing before the Commissioner on February 24, 1961, the Government produced the following evidence: 1) the indictment returned by the Grand Jury of the State of New Jersey charging Lillian Reis with murder; 2) a witness, an investigator from Atlantic County, New Jersey, who testified that the relator was the same person named in the said indictment and that he recognized her from her photographs, although he had never seen her prior to that day. It is of primary importance to

---

[1]. That section provides in pertinent part as follows: "Whoever moves or travels in interstate * * * commerce with intent either (1) to avoid prosecution * * * for murder * * * shall be fined not more than $5000 or imprisoned not more than five years, or both."

note that no indictment for the *Federal crime* was produced, nor was any other evidence offered relating to the circumstances surrounding Mrs. Reis' leaving the State of New Jersey on August 3, 1960. Always keeping in mind that the proof to be produced at that hearing was proof that the relator had left the State of New Jersey on August 3, 1960, *with the intent of avoiding prosecution for murder*, the record is indeed barren of any evidence relating to Mrs. Reis' reasons for leaving New Jersey. For example, the record does not disclose whether Mrs. Reis was a resident of New Jersey or of Pennsylvania. There is no evidence from which it could be implied or inferred that when Mrs. Reis left New Jersey on August 3, 1960, she did so believing she would be the subject of some future prosecution. It is crucial in this connection to note that the murder indictment was not returned until over six months *after* Mrs. Reis left New Jersey. We do not here hold that an indictment for a State crime returned *after* a person leaves a State and travels in interstate commerce is not competent evidence from which the inference could be drawn that the person left with the intent of avoiding prosecution. What we do hold is that an indictment for a State crime, returned after the accused left the State, is not *by itself* sufficient evidence to make out a prima facie case of probable cause to believe that such person committed the Federal offense of leaving the State with the intent of avoiding prosecution.

The United States Attorney has argued vigorously that the burden of establishing probable cause was met by the introduction into evidence of 1) the New Jersey indictment charging Lillian Reis with murder, 2) the testimony of the investigator that the relator was the person named in the said indictment, and 3) evidence that after the date of the alleged murder, the relator was found in the State of Pennsylvania. Intent, says the Government, can never be the subject of direct proof; therefore, the fact that the relator left New Jersey and was subsequently prosecuted for murder is competent evidence of her intent to avoid prosecution when she crossed the State line. Again we repeat, we agree that such evidence was competent evidence in the sense that an intent to avoid prosecution might be inferred therefrom. But such evidence *alone* is insufficient to establish *probable* cause to believe that relator left New Jersey with the intent to avoid prosecution.

The Government acknowledges that the proceedings before the Commissioner were governed by Criminal Rules 40(a) and 5(b) and (c), 18 U.S.C.,[2] and were not "removal" proceedings in the technical sense of the word, which are governed by Rule 40(b). The statutory guide, therefore, leaves us with the bare admonition that the Commissioner must find "probable cause" to believe that the defendant committed the offense charged, with no further indication of what constitutes probable cause. We have found

2. Rule 40(a) provides in pertinent part as follows: "If a person is arrested * * * on a warrant issued upon a complaint in another state but at a place less than 100 miles from the place of arrest * * * he shall be taken before the nearest available commissioner * * *; preliminary proceedings shall be conducted in accordance with Rule 5(b) and (c); and if held to answer, he shall be held to answer to the district court for the district in which the prosecution is pending, or if the arrest was without a warrant, for the district in which the offense was committed * * *"

Rule 5(b) provides in pertinent part as follows: "The commissioner shall inform the defendant of the complaint against him * * *"

Rule 5(c) provides in pertinent part as follows: " * * * the commissioner shall hear the evidence within a reasonable time. * * * If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court * * *"

several judicial pronouncements defining probable cause which we deem in point here. "Probable cause means more than opportunity to commit crime or presence in a particular place. It must be more than surmise or suspicion. There must be some tangible fact or incident which will support a judicial act, something which invokes discrimination of judicial discretion." United States v. Johnston, D.C.W.D.Wash.1923, 292 F. 491, 493. " * * * suspicion, guess, surmise, conjecture, and speculation, with some evidence as a basis, do not establish probable cause in the eye of the law." United States v. Green, D.C.N.D.N.Y.1905, 136 F. 618, 627. What evidence was produced by the Government which could give rise to more than mere surmise or suspicion that the relator left New Jersey on August 3, 1960, with the intent of avoiding prosecution? Would it be unreasonable to expect the Government to have produced some proof as to Mrs. Reis' whereabouts between August 3, 1960, and February 18, 1961; some evidence as to where she resided during that period and what her occupation was; some evidence of whether she had avoided questioning or attempted to avoid New Jersey authorities? We think the Government had the burden of submitting some such evidence to the Commissioner in this case.

Before concluding our discussion of the quantum of evidence necessary to make out a prima facie case of probable cause, we think it proper to mention the cases relied on by the Government in support of its position. These cases [3] are applications for writs of habeas corpus by persons sought as "fugitives from justice" by the executive authority of a state. A Federal statute [4] provides that whenever the executive authority of any state demands any person as a "fugitive from justice" from the executive authority of another state into which such person has fled, the executive of the harboring state shall cause such person to be arrested and delivered to the authorities of the demanding state. The cases decided under this section make it clear that the decision of who is a "fugitive from justice" is a decision primarily within the discretion of the executive power of the demanding state, and that a person may legally be a fugitive from justice *even though he left the demanding state having no idea he had violated its laws.* Obviously, evidence necessary to establish that a person is a "fugitive from justice" need not include proof of that person's *intent* when he left the demanding state. Therefore, the holdings of those cases as to what constitutes sufficient evidence of a person being a fugitive from justice are not controlling here.

After the Government rested its case, the Commissioner stated:

"Well, *probable cause is established by the bill of indictment,* and it is my duty now to hold this lady under reasonable bail to appear to answer the Federal warrant, that is, unlawful flight, in the United States District Court in New Jersey." (Emphasis supplied.)

We think there is no doubt that the Commissioner was proceeding under the erroneous assumption that the law required him to find probable cause to believe the relator violated the Federal statute by virtue of the fact that the Government introduced into evidence a bill of indictment for murder. The error is understandable: the cases *do* hold that at a hearing before a commissioner, probable cause of the commission of a Federal offense *is* established by the Government by introduction into evidence of a bill of indictment *charging the Federal offense.* The reason for this rule is clear; the return of a true bill by a Federal Grand Jury means that the Government has produced enough evidence to convince twelve reasonable men and women that there is probable cause to believe that a

---

3. Hogan v. O'Neill, 1920, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497; Black v. Miller, 9 Cir., 1932, 59 F.2d 687; and United States ex rel. Moulthorpe v. Matus, 2 Cir., 1954, 218 F.2d 466.

4. 18 U.S.C.A. § 3182.

Federal offense has been committed and that the person charged committed it. But we reiterate that at the hearing we are here reviewing, the indictment returned *by the Grand Jury of New Jersey* was not in itself sufficient to establish probable cause to believe that relator had *committed the Federal crime*, under the rule of the cases referred to above.

We think the error of the Commissioner created a fatal flaw in the proceedings below, making the hearing basically unfair to relator and depriving her of due process of law. Furthermore, applying the correct legal test to the evidence produced by the Government, we think that the Commissioner could not have reasonably concluded that there was probable cause to believe that relator had committed the Federal offense as charged.

■ We turn finally to the question of whether or not we have the power to issue a writ of habeas corpus under the circumstances of this case. Section 2241 of Title 28 of the United States Code provides, *inter alia*:

"Power to Grant Writ. * * *

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(1) he is in custody under or by color of the authority of the United States *or is committed for trial before some court thereof*."

It is well settled that Federal courts will not review the *weight of the evidence* heard by the Commissioner, nor will the court substitute its judgment for that of the Commissioner on disputed issues of fact. However, the court may inquire as to whether there was *any* evidence presented before the Commissioner from which he could have reasonably concluded that there is probable cause to believe the defendant committed the crime charged. Price v. Henkel, 1910, 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581. We conclude that had the Commissioner applied the correct legal principles, there

was no evidence presented by the Government upon which he could have reasonably found probable cause to believe that Mrs. Reis committed the Federal crime charged. Therefore, relator is entitled to have the writ issue if she is still "in custody."

The Government has argued that even though we were to decide that the writ should issue because of the Commissioner's error, still we should refrain from issuing the writ because the relator has been released on bail and, therefore, the question of the legality of her confinement is moot. The confusion here lies in the Government's failure to distinguish between the case of a defendant released on bail *pending the trial on the merits*, and the case of a defendant released on bail *pending the hearing and decision on the writ of habeas corpus itself*. We agree with the Government that had the Commissioner released the relator on bail pending her appearance before the United States District Court in New Jersey, the question of whether the writ of habeas corpus should now issue would be moot. United States ex rel. Potts v. Rabb, 3 Cir., 1944, 141 F.2d 45. But the Commissioner did not release the relator on bail at the conclusion of the February 24 hearing. Instead, he ordered her delivered into the custody of the United States Marshal. We ordered bail set pending our hearing and decision on the propriety of issuing the writ. Relator posted bill accordingly, but this fact in no way abrogated her right to have us decide the issues raised by the petition for the writ. U. S. ex rel. Binion v. O'Brien (Opinion by Judge Welsh, December 17, 1958, No. M–1888).

For all of the foregoing reasons, we enter the following Order:

*Order*

And now, to wit, this 9th day of March, 1961, the writ of habeas corpus is issued as prayed for and it is ordered that the petitioner, Lillian Reis, is hereby released from the custody of the United States Marshal which attached on Feb-

ruary 24, 1961, and any detention resulting therefrom.

It is further ordered that the bail posted pending hearing before this Court is discharged.