In the Matter of the Application of Lawrence W. Goldberg for a Writ of Habeas Corpus.

Lawrence W. GOLDBERG

v.

Edward J. HENDRICK, Superintendent, Philadelphia County Prisons.

Misc. No. M–3056.

United States District Court
E. D. Pennsylvania.

May 27, 1966.

Malcolm W. Berkowitz, Philadelphia, Pa., for petitioner.

Donn I. Cohen, of Liverant, Senft & Cohen, York, Pa., Sp. Counsel for Commonwealth of Pennsylvania.

## OPINION

BODY, District Judge.

The matter presently before the Court, respondent's motion to dismiss the petition of Lawrence W. Goldberg for a writ of habeas corpus, arises from an unusual set of circumstances. The principal substantive issue to be decided is whether the Pennsylvania Trespass Act, 18 P.S. § 4954, has been pre-empted by a 1956 amendment to the Atomic Energy Act, 42 U.S.C.A. § 2278a, by virtue of the Supremacy Clause of the United States Constitution, U.S.C.A.Const. Art. VI, cl. 2.

Briefly stated, the relevant facts are as follows: In 1961 the Philadelphia Electric Company, a Pennsylvania corporation, was granted a license by the Atomic Energy Commission for the construction of an atomic power plant in Peach Bottom Township, York County, Pennsylvania. The Philadelphia Electric Company, as sole licensee, then executed separate and independent contracts with some fifty-two other utilities whereby these other utilities helped to finance the project in return for information about the development of atomic energy. This cooperative group of companies is known as High Temperature Reactor Development Associates, Inc.

Construction began during the spring of 1962 on the 40,000 electrical kilowatt high gas-cooled reactor which will serve in proving the practicability of a promising concept for such reactors. The agreement with the AEC establishes that the Peach Bottom plant will be owned and operated by Philadelphia Electric Company. The AEC is to provide research and development assistance in establish-ing technology for the reactor and waived full use charges for the first five years of operation.

The alleged trespass occurred on December 19, 1962 on the Peach Bottom site at an area which was completely fenced in with guarded gates and prominently posted with printed notices that the land was private property and warning all persons from trespassing thereon under the penalties provided by the Act of 1943, May 21, P.L. 306, § 1 (18 P.S. § 4954). It is important to emphasize that this land was owned by the Philadelphia Electric Company.

Relator, without permission, entered the main gate at the construction site where building operations were underway in connection with the proposed atomic power plant. He stated that he entered the property for the purpose of looking at the construction of the power plant and taking pictures thereof. He refused to leave when requested to do so by an official of the Bechtel Corporation, a firm which apparently had contracts with Philadelphia Electric Company and the other group of companies. He remained inside the posted premises until arrested for violating Pennsylvania law by a Deputy Constable from York, Pennsylvania. There were no signs or regulations posted under the Atomic Energy Act, specifically 42 U.S.C.A. § 2278a.

On January 3, 1963, after a hearing before a magistrate, relator was convicted under the Pennsylvania statute and sentenced to pay a fine of five dollars ($5.00) and costs. He appealed his conviction and sentence and following a hearing de novo on July 24, 1963, The Honorable James E. Buckingham, Judge of the Court of Quarter Sessions of York County, found him guilty and likewise imposed a fine of five dollars ($5.00) and the costs of prosecution. Relator then appealed to the Supreme Court of Pennsylvania, Middle District, as of May Term 1964, No. 14. The Supreme Court affirmed his conviction, stating in a Per Curiam opinion dated July 1, 1964: "We find no merit in any of his contentions". Common-

wealth v. Goldberg, 415 Pa. 574, 575, 201 A.2d 603 (1964).

Following the decision by the Pennsylvania Supreme Court, the Clerk of Courts of York County mailed notices to relator on May 14, 1965 and July 2, 1965 that his fine and costs were due to be paid. He failed to pay and a writ of attachment was issued by Judge Buckingham on July 23, 1965. On or about July 31, 1965 relator was arrested upon a contempt citation at his home in Philadelphia, Pennsylvania. He was placed in custody by the authorities at the Philadelphia Detention Center which is under the supervision and authority of the respondent herein, Edward J. Hendrick. On August 2, 1965 relator petitioned this Court for the instant writ of habeas corpus and secured his release on five hundred dollars ($500.00) bail with surety pursuant to my Order of August 2, 1965 pending hearing and final disposition thereon. A hearing was held in this Court on August 11, 1965 at which time the factual allegations were presented and argument heard on the legal issues involved. Subsequent to that hearing and after several continuances, briefs were filed and arguments were heard on respondent's motion to dismiss the writ.

Before reaching the merits of the case, it is necessary to discuss two jurisdictional questions.

## I.
### EXHAUSTION OF STATE REMEDIES

■ Relator did not apply for a writ of habeas corpus in the state courts following the affirmance of his conviction by the Pennsylvania Supreme Court. It is true that a federal district court will ordinarily refuse to entertain a petition under such circumstances because of the doctrine of comity. United States ex rel. Drew v. Myers, 327 F.2d 174 (3rd Cir. 1964)

■■ However, the requirement in a federal habeas corpus proceeding that all state remedies must first be exhausted is satisfied when the petitioner has received an adverse adjudication as to his federal rights in the highest court of the state. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L. Ed.2d 900 (1959). In the present case, I construe the language of the Pennsylvania Supreme Court to the effect that they found no merit to *any* of relator's contentions as an adverse adjudication of all his allegations, including any federal rights.

Furthermore, my late Brother, Allan K. Grim, recognized that in certain cases no useful purpose would be served by requiring a petitioner to burden the state courts with more petitions, even though he has not technically exhausted all available state remedies. United States ex rel. Gary v. Hendrick, 238 F.Supp. 757 (E.D.Pa.1965) Judge Grim also cited In re Thompson's Petition, 301 F. 2d 659, 660 (3rd Cir. 1962) for the proposition "that it is never an 'indignity to state processes' to hold that the particular allegations of state abuses are clearly without merit". (238 F.Supp. at 759)

Since I am in full agreement with the foregoing views, I find that relator has sufficiently exhausted his state remedies.

## II.
### WHETHER RELATOR WAS "IN CUSTODY" WITHIN THE MEANING OF 28 U.S.C.A. § 2241

Section 2241 of Title 28 provides, in pertinent part, that:

"(c) The writ of habeas corpus shall not extend to a prisoner unless—
* * * (3) He is in custody in violation of the Constitution or laws or treaties of the United States."

■ In the present case relator was apprehended on or about July 31, 1965 and placed in immediate custody at the Philadelphia Detention Center. It is undisputed that he filed the instant petition for a writ of habeas corpus while still confined in the state institution. Therefore, relator was obviously "in custody" at the time he filed his petition. The fact that I released him on bail pending a hearing and final disposition of the mat-

ter should not retroactively defeat his satisfaction of the jurisdictional requirement that he be in custody for a writ to issue. Reis v. United States Marshal, 192 F.Supp. 79 (E.D.Pa.1961); State of Tennessee ex rel. Ford v. Morris, 236 F. Supp. 780 (W.D.Tenn.1965).

In Reis v. United States Marshal, supra, my Brother, Harold K. Wood, correctly distinguished the case of a defendant released on bail pending the trial on the merits from the case of a defendant released on bail pending the hearing and decision on the writ of habeas corpus itself. (192 F.Supp. at 83) Judge Wood's distinction was approved in the *Morris* case, supra, when that court stated that "[Judge Wood] simply held that the custody requirement was met because petitioner was in custody when he filed his petition". (236 F.Supp. at 782–783)

I find, therefore, that relator's release on bail pending his hearing and later disposition of the petition did not deprive this Court of jurisdiction to entertain the petition or to issue the writ, assuming he is entitled to a writ on the merits.

### III.

### THE MERITS OF RELATOR'S PETITION

Relator's principal contention as stated in his present petition is that his conviction under the Pennsylvania Trespass Act, 18 P.S. § 4954[1] is unconstitutional in that the Pennsylvania Act was superceded by, or pre-empted by, Section 2278a

of the Atomic Energy Act which provides in Sub-section (a) that:

"The Commission is authorized to issue regulations relating to the entry upon or carrying, transporting, or otherwise introducing or causing to be introduced any dangerous weapon, explosive, or other dangerous instrument or material likely to produce substantial injury or damage to persons or property, into or upon any facility, installation, or real property subject to the jurisdiction, administration, or in the custody of the Commission. Every such regulation of the Commission shall be posted conspicuously at the location involved."

Public Law 84–1006, § 6; 70 Stat. 1070; 42 U.S.C.A. § 2278a.

Our first inquiry in this regard necessarily becomes, whether § 2278a was intended to apply either to the type of trespass involved here or to property of the kind upon which relator "trespassed" and was ultimately arrested. A negative answer to that inquiry would immediately dispose of the issue in favor of respondent because the trespass provision of the Federal statute in question cannot possibly be said to preempt the State trespass act if the Federal provision was never designed to affect the same type of trespass or the same type of property over which the State exercises jurisdiction. Simply stated, unless there first exists an actual conflict between the State and Federal statutes, no question of preemption can arise.[2]

---

1. "Whoever wilfully enters upon any land, which the owner, lessee, or occupant has cause to be prominently posted with printed notices that the said land is private property, and warning all persons from trespassing thereon, under the penalties provided in this section, shall, upon conviction thereof in a summary proceeding, be sentenced to a fine not exceeding ten dollars ($10), together with the costs of prosecution, and in default of payment of said fine and costs, shall be committed to jail for one (1) day for each dollar of fine imposed. 1939, June 24, P.L. 872, § 954; 1943, May 21, P.L. 306, § 1."

2. In Florida Lime and Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1962), the Supreme Court enunciated the test to be applied in determining whether a Federal statute has pre-empted a State law. In that case the Court stated: "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." I conclude that no persuasive reasons for pre-emption

■ What, then, was Section 2278a designed to accomplish? It is sufficiently clear from the legislative history surrounding the 1956 Amendment that 42 U.S.C.A. § 2278a was intended to "furnishing a sound legal basis for prosecuting trespassers on *Commission* property in the absence of any Federal trespass statute of general applicability." S.Rep. No. 2530, 84th Cong., 2d Sess. 5 (1956); U.S. Code Cong. & Adm. News, p. 4430. (Emphasis supplied)

Furthermore, it is clear that this new section was meant to deal with simple trespasses per se, as well as those involving dangers to health and security. It makes them all misdemeanors, except those falling within other Federal statutes protecting against espionage, sabotage and depredation of Government property. Reynolds v. United States[3], 286 F.2d 433, 441 (9th Cir. 1960). Section 2278a applies, therefore, to the type of trespass involved here—that is, simple trespass.

As to the class of property affected, Section 2278a speaks of a "facility, installation, or real property subject to the * * * administration, or in the custody of the Commission." Do the privately-owned lands and facilities at Peach Bottom fall within this category? Counsel for relator vigorously argues that the land on which relator "trespassed" is, at the very least, "property subject to the administration" of the Commission because of the financial and scientific interest which AEC maintains in the Peach

Bottom project. I disagree. These connections, which the Commission has with the privately run project in the form of a cooperative program for the promotion of peaceful uses of atomic energy, do not magically convert this privately owned real estate into something akin to a Federal enclave or reservation.

■ The Senate Report on the Bill discussed the kind of property to which the Amendment relates:

"Such property can be both property in which the title is in the United States or property which is leased by the United States for use by the Commission. It does not extend to contractor-owned property."

[U. S. Code Cong. & Adm. News, p. 4427]

The above language demonstrates to my satisfaction that Section 2278a does not apply to the land at Peach Bottom, Pennsylvania, which is owned entirely by Philadelphia Electric Company. The site in question is not property which is either owned or leased by the United States. The Senate Report limits the application of Section 2278a to those two types of property.[4]

It is also important to note that 42 U.S.C.A. § 2279 provides that nothing contained in §§ 2274–2278a shall affect the applicability of any other laws. That section, when read in conjunction with the regulations[5] issued pursuant to Sec-

---

exist in this case and also that Congress has not unmistakably so ordained. As will be shown, infra, legislative history of § 2278a clearly indicates that this section was not meant to pre-empt the Pennsylvania trespass statute under the facts of this case.

3. In that case the court held that the Commission was not authorized to issue a regulation under 42 U.S.C.A. § 2201(i) barring trespass upon the Eniwetok Proving Grounds in the Pacific Ocean which were being used by the Commission. Defendant's conviction was reversed since the regulation purportedly issued under that section was invalid. The Court also reviewed the history and application of

Section 2278a with which we are concerned in the present case.

4. The court in Reynolds v. United States, 286 F.2d 433 (9th Cir. 1960) thought that Section 2278a might apply to property "used" by the Commission, as well as property owned or leased by the United States. 286 F.2d at 441, footnote 9. However, the court was of the view that Section 2278a applies only to the Commission's own activities such as nuclear testing and not to the activities of private licensees.

5. These regulations were adopted by the Commission on August 16, 1963 and are contained in 28 F.R. 8400, 10 C.F.R. 160.

tion 2278a, further demonstrates that this State trespass statute was in no way pre-empted by the Federal Act.

In addition, the fact that none of the regulations referred to above were ever issued for, or posted at, the Peach Bottom site supports the conclusion that Section 2278a was never intended to confer upon the United States jurisdiction over this particular property.

In conclusion, it is the opinion of this Court that 42 U.S.C.A. § 2278a has not pre-empted the Pennsylvania Trespass Statute, 18 P.S. § 4954, under the facts and circumstances of this case. We find that relator was properly arrested and convicted under the laws of Pennsylvania.

Having decided the foregoing and having found no merit whatsoever to any of relator's remaining contentions, his petition will be denied.

In particular, Section 160.8 provides: "Nothing in this part shall be construed to affect the applicability of the provi-

sions of *State* or other Federal laws." (Emphasis supplied)