EVANDER FORD, JR., et al., and KATIE JEAN ROBERTSON

*v.*

STATE OF TENNESSEE.

355 S.W.2d 102.

(*Nashville,* December Term, 1961.)

Opinion filed March 7, 1962.

Petition for Rehearing Denied May 4, 1962.

(See 356 S.W.2d 726.)

A. W. WILLIS, JR., R. B. SUGARMON, JR., B. L. HOOKS, B. F. JONES, H. T. LOCKARD, Memphis, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, for defendant in error.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

The defendants, Evander Ford, Jr., Alfred O'Neil Cross, James Harrington Smith, Ernestine Hill, Johnnie Mae Rogers, Charles Edward Patterson and Edgar Lee James, were convicted upon the same trial for willfully disturbing an assemblage of persons meeting for religious purposes (Section 39-1204, T.C.A.), and each was sentenced to serve sixty days in the Shelby County Penal Farm, plus of fine of $200.00.

The defendant, Katie Jean Robertson, was tried separately, she not being avaliable at the time of the first trial, and was convicted of the same offense and sentenced to serve sixty days and fined $175.00. Since these two cases grew out of the same set of facts and the defendants were acting in concert with each other, the cases were joined for purpose of appeal.

In the case of the defendant, Katie Jean Robertson, the conviction must be affirmed for failure to timely file the bill of exceptions. The Trial Court overruled the defendant's motion for a new trial on November 3, 1961. On Friday, December 1, 1961, the defendant moved the court for additional time in which to file and prepare her bill of exceptions. This motion was granted by the Trial Judge and the time for filing was extended thirty days from the 3rd day of December, 1961. As a result of this extension the defendant had until January 2, 1962,

in which to prepare and file the bill of exceptions. However, the bill of exceptions was not filed until January 4, 1962, which is two days late. A bill of exceptions which is filed too late does not become a part of the record in a case and cannot be looked to for any purpose. *O'Brien v. State,* 193 Tenn. 361, 246 S.W.2d 45. This leaves only the technical record before the Court and we are unable to detect any reversible error therein.

Having disposed of Katie Jean Robertson's case the Court will now proceed to discuss the appeal as to the remaining defendants. At the outset it must be noted that all of the proof in the record is uncontroverted. These defendants are negro youths and their criminal prosecution resulted from an incident which took place in the City of Memphis on the evening of August 30, 1960. It appears that the Assembly of God Church on this evening had leased the "Shell", a municipally owned amphitheater situated in Overton Park of that city, for the purpose of conducting a youth rally as a part of their church activities. This meeting had received a considerable amount of advertisement as to time and place it was to be conducted.

The meeting commenced at 7:30 o'clock, P.M. on this evening. At approximately 7:45 o'clock, P.M. the defendants herein, and some other negro youths who are not on trial here, entered the amphitheater. An usher on duty at this entrance met these defendants as they entered. The usher then informed the group that it would be better if they did not come in, that this was a meeting for the youth of the Assembly of God Church. When the defendants would not leave the usher asked them to take the rear seats. At this time the defendant Evander Ford,

Jr., who was the apparent leader of this group, turned and told his group to "scatter out". The defendants then broke into groups of two and simultaneously dispersed themselves throughout the audience. Even though there were seats available at the ends of the rows, the defendants for the most part proceeded to step over the people already seated and moved to the center of the rows. The people who were already seated began to move away and in some instances left the meeting. As a result of this mass entrance a general milling around was caused and an undercurrent went up throughout the audience which caused a delay in the service that was in progress. The police were then summoned and the defendants were placed under arrest for the offense indicated above.

The defendants stand convicted of Section 39-1204, Tennessee Code Annotated, which reads as follows:

"If any person willfully disturb or disquiet any assemblage of persons met for religious worship, or for educational or literary purposes, or as a lodge or for the purpose of engaging in or promoting the cause of temperance, by noise, profane discourse, rude or indecent behavior, or any other act, at or near the place of meeting, he shall be fined not less than twenty dollars ($20.00) nor more than two hundred dollars ($200), and may also be imprisoned not exceeding six (6) months in the county jail."

The defendants first argue that the statute only condemns acts which are noisy, rude, profane, indecent, or other similar acts and that their action was none of these, therefore, the State has failed to make out a case against them. The State on the other hand insists that the statute reaches any willful disturbance of a religious

assembly regardless of how it is accomplished. This squarely presents us with the problem of the construction of this statute.

At the outset it must be noted that this statute is not a breach of the peace statute as such, but rather it is a statute which is designed to protect to the citizens of this State the right to worship their God according to the dictates of their conscience without interruption. As a general rule these statutes have been very liberally construed by the Court. *Hollingsworth v. State,* 37 Tenn. 518. However, in order to determine the exact boundaries of this statute we feel that it is necessary to review its historical development.

The first statute upon this subject made any person who would disturb a religious assembly punishable as a rioter at common law. Chapter 35 of the Acts of 1801. Then by Chapter 60 of the Acts of 1815, the legislature enacted an additional statute to supplement Chapter 35 of the Acts of 1801. The part of Chapter 60 of the Acts of 1815 which is pertinent to our discussion here reads as follows:

"It shall be the duty of all justices of the peace, * * * that whenever any wicked or disorderly person or persons shall either by word or gesture or in any other manner whatsoever disturb any congregation which may have assembled themselves for the purpose of worshipping Almighty God, * * * shall immediately cause offender or offenders to be apprehended and brought before them or some other justice of the peace for the county in which such offense may be committed. * * *'' (Section 1, Chapter 60, Acts of 1815).

Then in 1858 the first Code of this State was adopted which contained a section that is the same as Section 39-1204, Tennessee Code Annotated, except that it only covered religious assemblies. By Chapter 85 of the Acts of 1870 this section was extended to cover educational and literary meetings and by Chapter 209 of the Acts of 1879 the section was placed in its present form.

However, when the Code of 1858 was adopted, Chapter 35 of the Acts of 1801 and Chapter 60 of the Acts of 1815 were brought forward into that Code. Thus, the Code of 1858 contained both Chapter 35 of the Acts of 1801 and Chapter 60 of the Acts of 1815, along with a section which was the same as our present Section 39-1204 after the abovementioned amendments. This remained in this state of affairs until 1921 when the Court was called upon to compare these various sections in *Dagley v. State,* 144 Tenn. 501, 234 S.W. 333. The Court in this case reached the conclusion that the section which is now Section 39-1204, of our present Code, embraced the same offense which was set out in the section containing Chapter 35 of the Acts of 1801 and Chapter 60 of the Acts of 1815.

It will be noted from the quoted part of Chapter 60 of the Acts of 1815 that it constituted an offense to disturb a religious assembly in any manner whatsoever. Therefore, in the light of the conclusion reached by the Court in the Dagley case, supra, i.e., the offense set out in Chapter 60 of the Acts of 1851 was included in the offense prescribed in what is now Section 39-1204, Tennessee Code Annotated, the only logical result to be reached here is that the phrase ''or any other act'' which appears in Section 39-1204, Tennessee Code Annotated, is all encompassing and it is unlawful for anyone to will-

fully disturb a religious assembly in any manner whatsoever.

 In view of the construction which must be placed upon Section 39-1204, Tennessee Code Annotated, we are of the opinion that these defendants violated the statute. Unquestionably the act was willful. These defendants had been tendered seats at this meeting even though they were at first asked not to come in. However, the defendants would not take these seats and upon command of their leader to ''scatter out'' they dispersed themselves throughout the audience simultaneously. The proof shows that there were seats available at the ends of the rows where they could be seated, but they, nevertheless, proceeded to step over the people already seated in an effort to get to the center of the rows. These acts are wholly inconsistent with any theory that these defendants came with the intent of joining in the meeting. The very precise manner in which this maneuver was executed indicates very clearly that these defendants had planned their course of action before arriving at the meeting. This leaves us no choice but to conclude that this was a well organized scheme designed to create an incident.

 This brings us to the question of whether or not their act disturbed the meeting. The record shows that when the defendants descended upon this meeting in mass and began to step over the persons already seated it caused these people to move to let them in and some to move away, and others to leave the meeting. Reverend Scruggs, the official in charge of the meeting, stated that there was quite a commotion caused by this act with all these people moving around and further that they had to

delay the service. The Court in the case of *Holt v. State,* 60 Tenn. 192, ruled that it was only necessary that the act attract the attention of any part or parts of the assembly to constitute a violation of the statute. This act undoubtedly attracted the attention of a great portion of this assembly if not all of it, but the defendants' act even went further than that which is required under the rule in the Holt case, supra, because their act completely interrupted the service. We are, therefore, of the opinion that there is more than ample proof contained in this record to support the verdict of the jury.

The defendants next argue that their constitutional rights are being violated by this conviction because this is a publicly owned facility and they could not be excluded. First, it must be noted that the defendants were tendered seats at this meeting even though they had been denied admission at the outset. Second, this is not a suit to enjoin a discriminatory practice, nor is it a damage suit based upon the violation of civil rights, but rather a criminal action charging the defendants with willfully disturbing a religious assembly. Whether these defendants had a right to be at the place where this religious meeting was being conducted is not an issue in this lawsuit. The sole issue here is whether or not these defendants willfully disturbed the meeting that was being held there and we have hereinbefore determined this question adversely to the defendants' contention.

Lastly, the defendants contend that the verdict of the jury is so severe that it evinces passion, prejudice and caprice and, therefore, is void. The evidence as presented by the record clearly shows them to be guilty of violating this particular statute. We have diligently

searched this record and are unable to find any mitigating circumstances which would warrant us in disturbing the verdict of the jury.

Judgment affirmed.

### ON PETITION TO REHEAR.

A petition to rehear has been filed in this cause wherein several complaints as to the action of the Court are charged. However, for the most part the points relied upon in the petition are the same as those presented upon the original hearing.

In this cause the defendant, Katie Jean Robertson, had been tried separately from the other defendants and therefore the pleadings, proof, ets., were compiled in a separate and distinct record. Prior to the trial we granted an order of consolidation for these two cases and allowed the defendant, Katie Jean Robertson, to adopt the brief of the other defendants. It was noted by the Court, however, that her bill of exceptions was not timely filed, and under our rulings such bill of exceptions could not be considered by the Court. Thus, there was no record of the proof adduced upon her trial before the Court and all matters turning upon that proof could not be considered in the absence of that proof.

It is urged upon the Court in the petition to rehear that she, Katie Jean Robertson, be granted a rehearing for the reasons set out in behalf of the defendants who were tried separately from her. We cannot consider upon a petition to rehear what we could not consider upon the original hearing. It is well settled that when two or more cases are joined together for hearing each must turn upon the pleadings, proof and

proceedings in their respective suits. *Bouldin v. Taylor*, 152 Tenn. 97, 275 S.W. 340.

The defendants also complain of the Court's construction of Section 39-1204 T.C.A. We feel that the conclusion reached by the Court and the reasons therefor are amply set forth in the original opinion.

Likewise, as was pointed out in the opinion the gravamen of the offense is the wilfulness of the act and we are satisfied that the defendants' acts herein were wilfully done. This is especially true in the light of the order by their leader to "scatter out" and their actions subsequent to this command.

■ The defendants once again complain that their constitutional rights have been violated because the place where the meeting was conducted was a publicly owned facility and they could not be excluded, but we do not reach this question because it is not material to the lawsuit. The mere fact that they had a constitutional right to be present, if such be a fact, would not grant to them any immunity from the violation of a criminal statute.

The petition to rehear is denied.

BURNETT, FELTS, WHITE, and DYER, JUSTICES, concur.