STATE OF TENNESSEE ex rel. Evander FORD, Jr., et al., Petitioners,

v.

Honorable William N. MORRIS, Jr., Sheriff, Shelby County, Tennessee, et al., Respondents.

Civ. No. 5348.

United States District Court
W. D. Tennessee, W. D.

Jan. 5, 1965.

R. B. Sugarmon, Jr., B. L. Hooks, A. W. Willis, H. T. Lockard, B. F. Jones, I. H. Murphy, Memphis, Tenn., Jack Greenberg, James M. Nabrit, III, Derrick A. Bell, Jr., New York City, for petitioners.

Phil M. Canale, Jr., Dist. Atty. Gen., Robert K. Dwyer, James C. Beasley, Asst. Atty. Gen., Memphis, Tenn., for respondents.

BAILEY BROWN, District Judge.

This is a petition for a writ of habeas corpus filed by eight persons, all of the Negro race, who were convicted in the Criminal Court of Shelby County, Tennessee, of wilfully disturbing a religious assembly. Petitioners contend that their convictions cannot stand in that they violate the Fourteenth Amendment to the United States Constitution.

At the trial in state court, petitioners raised, by way of a motion to dismiss and later by a motion for a new trial, their Fourteenth Amendment defenses, which motions were overruled. They appealed their convictions to the Supreme Court of Tennessee, again asserting their Fourteenth Amendment defenses, and that court affirmed their convictions. Ford et al. v. State, 210 Tenn. 105, 355 S.W.2d 102 (1961); rehearing denied 210 Tenn. 114, 356 S.W.2d 726 (1962).[1]

Thereafter, petitioners sought a writ of certiorari in the Supreme Court of the United States, basing their petition on their contention that the convictions could not stand under the Fourteenth Amendment, but that Court denied certiorari. 377 U.S. 994, 84 S.Ct. 1901, 12 L.Ed.2d 1046 (1964); rehearing denied U.S., 85 S.Ct. 12, 13 L.Ed.2d 76 (1964).

At the time of filing of this petition for a writ of habeas corpus, petitioners, who had made bond, had not yet been arrested pursuant to the final affirmance of their convictions but a *capias* for their arrest was in the hands of respondent

---

1. The appeal of petitioner Robertson was dismissed on the ground that she had not timely filed her bill of exceptions, but, as will be seen, this is of no importance in our determination of her right to a writ of habeas corpus.

Sheriff of Shelby County. The Sheriff and the bonding company were made respondents. This court issued an order to show cause why a writ of habeas corpus should not issue and ordered a stay of their service of sentences and payment of fines pending the determination of their application for habeas corpus. A hearing has been held pursuant to the show cause order, following which this Court took the matter under advisement.

■ Respondents first contend that this petition for habeas corpus must fail because petitioners' Fourteenth Amendment contentions have been raised and decided adversely to them both in the state criminal court and the state Supreme Court and the Supreme Court of the United States has denied certiorari. These state adjudications, however, do not bar this application for habeas corpus, for the doctrine of res judicata does not apply here, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); and denial of certiorari is not an affirmance, Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

■ Next, respondents contend that this petition must fail because, not having brought a state habeas corpus proceeding, they have not exhausted state remedies. But the requirement, in a federal habeas corpus proceeding, that all state remedies first be exhausted is as a matter of law satisfied when the petitioner has received an adverse adjudication as to his federal rights in the highest court of the state. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397 (1953) and Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).

■ ■ Next, respondents contend that this petition must fail because, at the time it was filed, petitioners were not "in custody" within the meaning of 28 U.S.C.A. § 2241(c) (3), the federal habeas corpus statute. It was apparently a recognition of this requirement that caused the petitioners to join the bonding company as a respondent. We conclude that a federal habeas corpus petitioner must be in custody at the time he files his petition and that these petitioners were not so in custody at the time they filed this petition.

The cases generally hold that a person who is at large on bail is not in custody so as to entitle him to a writ of habeas corpus. Stallings v. Splain, 253 U.S. 339, 40 S.Ct. 537, 64 L.Ed. 940 (1920), Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748 (1898), Sibray v. United States, 185 F. 401 (C.A. 3, 1911), Annotation, 77 A.L.R.2d 1307. It is true that MacKenzie v. Barrett, 141 F. 964 (C.A. 7, 1905), holds to the contrary, but the Sibray opinion, supra, later criticized the MacKenzie opinion and the Seventh Circuit itself later overruled the MacKenzie case in United States ex rel. Walmer v. Tittemore, 61 F.2d 909 (C.A. 7, 1932). Accordingly, unless these federal cases have been overruled by the recent decision of the Supreme Court in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), a person at large on bail may not maintain a petition for a writ of habeas corpus. There the Court held that a former prisoner on parole could maintain a petition for habeas corpus. However, the Court emphasized that petitioner's parole was subject to many conditions which controlled his day-to-day actions. In particular, he was confined to his community, house and job at the sufferance of his parole officer. Persons at large on bond are not, and particularly petitioners in the case at bar were not, subject to such control. We therefore hold that Jones does not overrule these earlier cases.

Petitioners also rely, in this connection, on Ries v. United States Marshal, 192 F.Supp. 79 (E.D.Pa., 1961). In that case, petitioner had brought a habeas corpus proceeding and had been released on bond pending the hearing on his application. The Government contended that his application must fail because petitioner was not in custody at the time of the hearing. The Court simply held that the custody requirement was met

because petitioner was in custody when he filed his petition.

■ Our holding that this petition for a writ of habeas corpus must fail on the ground that petitioners were not in custody at the time the petition was filed would, of course, dispose of this matter. However, this is a technical defense which would no longer be available to respondents upon the dismissal of the petition and the arrest of petitioners, after which, undoubtedly, petitioners would file a second petition. We, therefore, think it proper to deal with respondents' next contention, which is that, in any event, the conviction of petitioners does not violate their due process and equal protection rights under the Fourteenth Amendment.

As stated, petitioners were convicted of wilfully disturbing a religious assembly. More specifically, petitioners entered a youth rally, to which the public was invited, of the Assembly of God Church being held in a leased public amphitheatre on the premises of a public park in the City of Memphis. It is petitioners' contention that their conduct which was the basis for their conviction was nothing more than their assertion of their equal protection right under the Fourteenth Amendment to attend this rally. In this connection they rely on, among other cases, Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963) which holds that segregation in a public park based on race is unconstitutional. It is petitioners' additional contention that their conviction violates their due process right under the Fourteenth Amendment because there is no evidence from which a jury could reasonably find them guilty of the crime defined in the statute and in the indictment charged. See, for example, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The Tennessee statute under which petitioners were indicted and convicted (T.C.A. § 39–1204) reads as follows:

"Disturbing religious, education, literary, or temperance assemblies—

Penalty.—If any person willfully disturb or disquiet any assemblage of persons met for religious worship, or for educational or literary purposes, or as a lodge or for the purpose of engaging in or promoting the cause of temperance, by noise, profane discourse, rude or indecent behavior, or any other act, at or near the place of meeting, he shall be fined not less than twenty dollars ($20.00) nor more than two hundred dollars ($200), and may also be imprisoned not exceeding six (6) months in the county jail."

The transcript of the record of the proceedings in the state criminal court has been furnished to this court and has been carefully reviewed. This transcript will be filed as a part of the record in this habeas corpus proceeding.

■ With respect to the equal protection issue, on the motion to dismiss in the state criminal court, that court indicated that it thought that petitioners had no constitutional right to attend the rally, the Court's theory being that the religious freedom guaranty in the First Amendment allowed segregation by race at the rally. (Tr. pp. 107–114). (The First Amendment, of course, can have application to non-federal authorities only to the extent that its guaranty is incorporated into the Fourteenth Amendment.) Although the competing guaranties of religious freedom and equal protection might raise a serious question as to the right of petitioners to attend this rally, we assume, as respondents assume, for purposes of this decision, that they did have such a constitutional right. However, even if the trial court was incorrect in thinking that petitioners had no right to attend the rally, it appears that this had no effect on the outcome of the prosecution. This is true because the transcript, and particularly the charge to the jury, indicates clearly that the case was not tried on the theory that petitioners had no right to attend the rally. Also, the trial court's belief

that they did not have such a right was not made known to the jury. Moreover, the opinion by the Supreme Court of Tennessee on appeal, affirming the convictions, clearly is not based on the assumption that petitioners had no constitutional right to attend the rally. 210 Tenn. 105, 355 S.W.2d 102.

The due process of law question for our determination is whether or not, from the evidence adduced at the trial, a jury could reasonably find that the ingredients of the crime defined in the statute and charged in the indictment were proven. Under this statute, it is necessary that it be shown that a defendant attended a religious gathering with intent to disturb or disquiet the gathering and committed some objective act which in fact disturbed or disquieted the gathering. Since we assume that petitioners had a constitutional right to attend under the equal protection clause, it follows that the objective conduct must be conduct other than and beyond the simple assertion of their right to attend.

 Petitioners chose not to testify at their trial, or to introduce any other evidence, and therefore the only evidence adduced was that offered by the State. From this evidence, the jury could find the following:

The religious rally began promptly as scheduled at 7:30 p. m. and petitioners appeared at an entrance at about 7:45 p. m. The participants in the rally were singing at that time. Petitioners were met by ushers who advised them that they could not enter because it was a segregated meeting. Petitioners, however, insisted on entering, and the ushers then advised them that they might be seated but to take the first available empty seats immediately to the rear of those persons already seated. With this, petitioner Ford, the leader of the group, exclaimed, "Scatter out," and at this direction, petitioners moved down into the area where persons were already seated, passed up empty seats at the ends of the rows, moved in front of persons already seated, and made room for themselves in the middle of the rows. This conduct caused a commotion, the stopping of the showing of a film that had begun, and caused some of the participants to begin to leave.

We believe that upon such findings the jury could further find that petitioners attended the rally with the intent to disturb or disquiet it, and that following their assertion of their right to attend, petitioners, with such intent, committed objective acts beyond the assertion of this right, and that the rally was disturbed by this conduct.

Petitioners contend that even if they committed acts which went beyond the assertion of their right to attend, a conviction based on such conduct would still deprive them of equal protection of the laws. At the time of this incident, petitioners claim in this connection, the City of Memphis had an ordinance or at least a policy requiring racial segregation with respect to this amphitheatre under these circumstances. Petitioners then rely, by analogy, upon such cases as Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963) and Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963), holding that criminal trespass laws cannot be constitutionally invoked to support the desire of the owner of a private business to maintain racial segregation on his premises provided there is a local ordinance or even a local policy requiring such segregation. It does not actually appear in the record here whether the City of Memphis at that time had such an ordinance or policy applicable to this religious rally. However, even if there was such an ordinance or policy in effect, we do not believe that the Peterson and Lombard cases require the invalidation of these convictions. Those decisions do not prevent a prosecution for a breach of the peace based on conduct beyond and in addition to the entering of a place of business for service.

Petitioners further contend that this Court should, in order to determine whether these convictions are unconstitu-

tional, hold a full evidentiary hearing and in effect try the facts *de novo*, relying on Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745 (1963). There the Court said at p. 313, 83 S.Ct. at p. 757:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing, or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

It does not appear here that petitioners' criminal trial fits into any of these categories. The facts were not as fully developed as might have been desirable but this was largely due to the choice of petitioners not to testify. The charge to the jury, moreover, could have been fuller and more explicit, but employed counsel for petitioners at the criminal trial did not offer special requests for an additional charge. In any event, petitioners make no quarrel with the charge. We have already determined that the record supports the factual determination.

 At bottom, petitioners' complaint is that they would not have been convicted for what they did had they not been Negroes. However, the record not only indicates that petitioners were not tried on the theory that they had no right to attend the rally, but it also indicates that the prospective jurors were carefully questioned on voir dire examination as to any racial bias. This court cannot invalidate a state criminal court conviction because of a suspicion that the jury might have been influenced by unconstitutional considerations.

It results that the petition for habeas corpus will be denied and the order staying the service of sentences and payment of fines will be rescinded.