IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 1, 1999 Session

## WILLIAM CANTRELL v. DeKALB COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for DeKalb County**
**No. 7350     John J. Maddux, Judge**

---

**No. M1998-00964-COA-R3-CV - Filed August 3, 2001**

---

This appeal involves two deputy sheriffs' response to a church's complaint that one of its members was disrupting a church assembly. After the deputy sheriffs suggested that he leave the premises, the church member filed a civil rights action in the Circuit Court for DeKalb County alleging that the two deputies had unlawfully detained him and had interfered with his right to practice his religion. The law enforcement officers, asserting qualified immunity, moved for a summary judgment. The trial court denied their motion. We have determined that the trial court erred because the undisputed facts demonstrate that the officers are entitled to qualified immunity because they acted reasonably and did not violate any of the church members' clearly established statutory or constitutional rights. Accordingly, we vacate the order denying the summary judgment and remand the case with directions that it be dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Michael E. Evans, Nashville, Tennessee, for the appellants, DeKalb County, Tennessee, Brent Russell, Trevor Young, and Kenneth Pack.

Richard M. Brooks, Carthage, Tennessee, for the appellee, William Cantrell.

**OPINION**

**I.**

William Cantrell is a member of the Phillipi Church of Christ in DeKalb County. During an informal church meeting on July 10, 1996, he resigned as an elected lay Sunday school teacher apparently over a doctrinal disagreement with the church's pastor. Mr. Cantrell had second thoughts about his resignation, and, during the regular Sunday school assembly on July 14, 1996, he commandeered the podium and announced that he retracted his resignation. Then, he proceeded to

read several Bible verses intended to cast aspersions on the church's pastor and several other members of the congregation.[1]

While Mr. Cantrell was speaking, Mark Lance, the church's pastor, requested his wife to ask another church member to telephone the Sheriff of DeKalb County to report that Mr. Cantrell was disturbing their assembly. This call was dispatched to Deputy Trevor Young who immediately contacted Sheriff Kenneth Pack for advice. Sheriff Pack instructed Deputy Young to investigate the complaint because state law prohibited the disruption of a public meeting.[2]

Deputy Young and Deputy Brent Russell then responded to the complaint. The pastor and two members of the congregation met the deputies in the church parking lot. They complained that Mr. Cantrell was disrupting their assembly and requested the deputies to remove him from the church. Deputy Young informed them that he could only ask Mr. Cantrell to leave because the officers had not personally witnessed the disruption and because no warrant had been issued for Mr. Cantrell's arrest.

The two deputies then entered the church and found Mr. Cantrell sitting quietly in the rear of the church. They told him that they had received a complaint that he was disrupting the assembly and curtly suggested that he leave the building so that they could talk with him outside. Mr. Cantrell complied and left the church. Once outside in the parking lot, Mr. Cantrell asked the deputies if he was under arrest. The deputies responded that he was not under arrest and suggested that he leave the premises and return another day to resolve his difference with the pastor. Mr. Cantrell eventually left after the deputies declined to arrest him.

On July 11, 1997, Mr. Cantrell filed a civil rights action in the Circuit Court for DeKalb County against DeKalb County, Sheriff Pack, and Deputies Young and Russell. He sought $10,000 in compensatory damages and $100,000 in punitive damages. The defendants filed a joint answer denying that they had violated any of Mr. Cantrell's rights under color of law. Later, following the depositions of Mr. Cantrell and the two deputies, the defendants moved for a summary judgment based on the law enforcement officers' qualified immunity for acts undertaken in good faith within the scope of their duty. The trial court denied the motion for summary judgment, and the county and the law enforcement officers appealed.[3]

---

[1]According to the pastor and others present, Mr. Cantrell also called the pastor "the devil from Warren County" and referred to two other church members as "the devil's disciples."

[2]Tenn. Code Ann. § 39-17-306(a)(1997) states that "[a] person commits an offense if, with the intent to prevent or disrupt a lawful meeting, procession, or gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance."

[3]We have allowed this appeal under the collateral order doctrine, even though the order denying the motion for summary judgment was not a final order for the purposes of Tenn. R. App. P. 3(a). *Mitchell v. Forsyth*, 472 U.S. 511, 526-30, 105 S. Ct. 2806, 2815-17 (1985); *Fann v. Brailey*, 841 S.W.2d 833, 835 (Tenn. Ct. App. 1992).

# II.
## THE STANDARD OF REVIEW

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, ___ S.W.3d ___, ___, 2001 WL 740770, at *2 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn. Ct. App. 1999). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n. 5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n. 6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, ___ S.W.3d ___, ___, 2001 WL 760081, at *3 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must

consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## III.
### THE QUALIFIED IMMUNITY DEFENSE

The dispositive issue for this appeal is whether the law enforcement officials have presented undisputed facts demonstrating that they are entitled to qualified immunity as a matter of law. The trial court concluded that they did not. We respectfully disagree.

### A.

The courts fashioned the defense of qualified immunity for governmental officials facing civil rights suits to strike a balance between society's interest in safeguarding citizens' constitutional rights and the ability of public officials to perform their duties. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3039 (1987); *Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 3019 (1984). While civil actions for damages may be a citizen's only recourse to vindicate his or her constitutional rights when public officials abuse their power, *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 2736 (1982), harassing litigation and the possible exposure to personal liability will unduly inhibit public officials in the good faith performance of their duties. *Anderson v. Creighton*, 483 U.S. at 638, 107 S. Ct. 3038; *Harlow v. Fitzgerald*, 457 U.S. at 814, 102 S. Ct. at 2736.

The defense of qualified immunity is available to public officials whose conduct conforms to a standard of objective legal reasonableness. *Anderson v. Creighton*, 483 U.S. at 639, 107 S. Ct. at 3038; *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S. Ct. at 2739. Under this standard, governmental officials performing discretionary functions will be shielded from liability for civil damages as long as their conduct does not violate the clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S. Ct. at 2738; *Payne v. Breuer*, 891 S.W.2d 200, 202 (Tenn. 1994); *Fann v. Brailey*, 841 S.W.2d at 835. In order for a statutory or constitutional right to be "clearly established," its contours must be so clear that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. at 640, 107 S. Ct. at 3039. In other words, the unlawfulness of the act must be apparent in light of the pre-existing law. *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98 (1986); *Davis v. Scherer*, 468 U.S. at 191, 195, 104 S. Ct. at 3017, 3019.

When the qualified immunity defense is raised in the context of a summary judgment motion, the appellate courts review orders denying the motion de novo. *Rogers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995). We turn our attention first to whether the plaintiff has stated a claim under 42 U.S.C. § 1983 (1994) before determining whether qualified immunity should attach. *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995); *Sweatt v. Raney*, ___ S.W.3d ___, ___, 2000 WL 791820, at *4 (Tenn. Ct. App. 2000). If the plaintiff has articulated a violation of a clearly established right, we then proceed to determine whether the defendant's conduct violated that right. *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995). In order for a right to be "clearly established," the law must be clear with regard to the defendant's particular actions in the particular circumstances of the case. *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993).

**B.**

Mr. Cantrell argues that he has effectively articulated a claim based on two clearly established rights – his right to practice his religion and his right to be free from unwarranted governmental restrictions on his personal freedom. Undoubtedly, both the state and federal constitutions restrain governments from inappropriately interfering with Mr. Cantrell's personal liberties. However, under the particular circumstances of this case, the undisputed facts do not provide a basis for concluding that a reasonable officer should have understood that the actions at issue in this case violated Mr. Cantrell's clearly established rights.

**1.**
**Mr. Cantrell's Free Exercise Rights**

Mr. Cantrell, like all persons, possesses certain clearly established rights with regard to the practice of his religion. Under both the Religion Clauses in U.S. Const. amend. I and Tenn. Const. art. I, § 3, he has an absolute right to believe in any religious principles or dogma he desires. *State ex rel. Swann v. Pack*, 527 S.W.2d 99, 111 (Tenn. 1975); *Wolf v. Sundquist*, 955 S.W.2d 626, 630 (Tenn. Ct. App. 1997). He also has the right to act in accordance with his beliefs. The question in this case is whether Mr. Cantrell, when acting in accordance with his religious beliefs, has a clearly established right to disrupt others who are attempting to exercise their own religious rights. The answer is no.

Tennessee has long recognized and protected the right of persons to practice their religion free from inappropriate interference or disruption. Persons who intentionally disrupt a public meeting or gathering, including a church service, may be criminally prosecuted. Tenn. Code Ann. § 39-17-306; *Ford v. State*, 210 Tenn. 105, 110, 355 S.W.2d 102, 103-04 (1962); *Hollingsworth v. State*, 37 Tenn. (5 Sneed) 517, 520 (1858). This statute does not distinguish disruptive conduct motivated by religious beliefs from other sorts of disruptive conduct. *Riley v. District of Columbia*, 283 A.2d 819, 823 (D.C. 1971); *People v. Morrisey*, 614 N.Y.S.2d 686, 692 (N.Y. Crim. Ct. 1994); *Corporation of President of Church of Jesus Christ of Latter Day Saints v. Wallace*, 590 P.2d 343, 345 (Utah 1979) (construing and applying similar statutes). Thus, when the sheriff's department received the complaint about the events unfolding at the Phillipi Church of Christ, a law enforcement

officer in Tennessee would have reasonably understood that the possibly illegal conduct had occurred or was occurring.

**2.**
**Mr. Cantrell's Right To Be Free From Unwarranted Detention**

After receiving this information, the deputies drove to the church because they had a statutory responsibility to suppress breaches of the peace and to arrest persons they knew or had reason to suspect had breached the peace. Tenn. Code Ann. §§ 38-3-102, -108 (1997). They were met at the church by the pastor and two members of the church who told them unequivocally that Mr. Cantrell was disrupting an on-going assembly. Armed with this information, the deputies entered the church to talk with Mr. Cantrell.

Not every encounter between a law enforcement officer and a citizen amounts to a seizure of the person. Such a seizure occurs only when the officer, either by means of physical force or show of authority, has in some way restrained a person's liberty. *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). The test for determining whether a seizure occurred is whether, taking into account all the circumstances surrounding the encounter, the officer's conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387 (1991). However, an encounter with a law enforcement officer will not amount to a seizure simply because the person feels an inherent social pressure to cooperate. The Tennessee Supreme Court has held that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *State v. Daniel*, 12 S.W.3d at 425 (citing *INS v. Delgado*, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762 (1984)).

Mr. Cantrell insists that he believed that he was not at liberty to ignore the deputies' request to leave the church to talk with them in the parking lot. Accordingly, we will assume that his encounter with the deputies on July 14, 1996, amounted to a brief, investigatory detention that implicates rights protected by U.S. Const. amend IV and Tenn. Const. art. I, § 7. However, the inquiry cannot end here. The law permits a brief, investigatory detention when the law enforcement officers have a reasonable, articulable suspicion that a person has engaged in, or is preparing to engage in, criminal behavior. *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000); *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999).

Shortly before Deputies Young and Russell entered the church to talk with Mr. Cantrell, they had been told by the church's pastor and two other church members that Mr. Cantrell had disrupted the church assembly. This information was sufficient to give them a reasonable suspicion that Mr. Cantrell had committed, and might again commit, a criminal act – disrupting the church assembly. Accordingly, the deputies possessed sufficient information to warrant requesting Mr. Cantrell to talk with them in the church parking lot and to suggest that he return on another occasion to address his disagreements with the pastor. Based on the undisputed facts, the deputies are entitled to qualified

-6-

immunity because they acted reasonably and did not violate any of Mr. Cantrell's clearly established rights when they asked him to talk with them in the parking lot of the church and then suggested that he pursue his disagreements with the pastor on another day.

## IV.

We vacate the order denying the defendants' motion for summary judgment and remand the case with instructions to grant the summary judgment and enter an order dismissing all claims against DeKalb County, Sheriff Pack, and Deputies Young and Russell. We tax the costs of this appeal to William Cantrell for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE