IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2000

## CHARLES WAYNE ROOKER v. DONAL CAMPBELL

**Appeal from the Chancery Court for Davidson County**
**No. 99-946-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M1999-01657-COA-R3-CV - Filed March 4, 2003**

---

This appeal involves a dispute between a prisoner and the Department of Correction over his release eligibility date. Dissatisfied with the response to his petition for a declaratory order, the prisoner filed a petition for a declaratory judgment in the Chancery Court for Davidson County, asserting that the extension of his release eligibility date violated the Department's policy regarding punishment for escape and the terms of his plea agreement. He also claimed that the Department had wrongfully deprived him of sentence reduction credits. The trial court dismissed the petition, and the prisoner has appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Charles Wayne Rooker, Pikeville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Stephanie R. Reevers, Senior Counsel, for the appellee, Donal Campbell.

## OPINION

## I.

In 1985, Charles Wayne Rooker was convicted of first degree burglary, forgery, and robbery with a deadly weapon. Based on a plea bargain, he was ordered to serve his three sentences concurrently. Thus, his total effective sentence for these three crimes was twelve years. Mr. Rooker was paroled in March 1987 but soon resumed his life of crime. He was convicted of second degree murder and attempted prescription forgery and received consecutive sentences of twenty years and one year respectively. These two sentences were ordered to run consecutively with his original 1985 sentences.

Mr. Rooker resumed serving his original 12-year sentence from 1985 when he returned to prison. In June 1990, he escaped from the Turney Center before he had completed serving that sentence. He was recaptured in a matter of days. As a result of this escapade, Mr. Rooker was convicted of felony escape and was also charged with violating prison disciplinary rules. He was

sentenced to one year for the felony escape. As punishment for the disciplinary offense, the Department extended the release eligibility date on the sentences he was already serving by twenty percent pursuant to Tenn. Dep't Corr. Policy Index No. 502.02 (1996) (superseded 2000).

Mr. Rooker did not agree with the Department's application of Policy No. 502.02 because he believed that it violated the plea agreement on his second degree murder conviction and because he believed that he was being wrongfully deprived of approximately one year's worth of sentence credits that he had already earned. As he saw it, the Department exceeded its authority when it "extended [his] current offense years past the parole date set by the trial court." He petitioned the Department for a declaratory ruling, and the Department eventually provided him with a written explanation regarding its calculation of his release eligibility date.

In April 1999, Mr. Rooker filed a complaint for declaratory judgment in the Chancery Court for Davidson County, challenging the Department's extension of his release eligibility date and alleging that he had been wrongfully deprived of some of his sentence credits. The Department responded by moving to dismiss the complaint for failure to state a claim. Both parties submitted materials outside the pleadings. In September 1999, the trial court dismissed Mr. Rooker's petition after finding (1) that the extension of Mr. Rooker's release eligibility date appropriately encompassed all three of his consecutive sentences, (2) that by escaping, Mr. Rooker had forfeited any expectation of becoming eligible for parole under the terms of his plea agreement, and (3) that Mr. Rooker had not been deprived of any sentence credits as a result of his escape. Mr. Rooker has appealed.

## II.

Although the trial court's final order speaks in terms of granting the Department's motion to dismiss, in reality the motion should be construed as one for summary judgment because the parties submitted, and the trial court apparently considered, evidentiary materials beyond the pleadings.[1] Accordingly, we will review the judgment using the principles applicable to reviewing orders granting motions for summary judgment. *Sutton v. Davis*, 916 S.W.2d 937, 938 (Tenn. Ct. App. 1995); *D. T. McCall & Sons v. Seagraves*, 796 S.W.2d 457, 459-60 (Tenn. Ct. App. 1990).

The standards for reviewing summary judgments on appeal are well-settled. A summary judgment is proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). Because a summary judgment involves an issue of law rather than an issue of fact, *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002), an order granting a summary judgment is not entitled to a presumption of correctness on appeal. *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001).

---

[1] Trial courts must convert Tenn. R. Civ. P. 12.02(6) motions to Tenn. R. Civ. P. 56 motions if they do not exclude extraneous evidentiary materials submitted by either party. *Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 144 (Tenn. Ct. App. 1998); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn. Ct. App. 1995). In this case, both parties submitted evidentiary materials for the court's consideration.

Appellate courts do not employ the standard of review in Tenn. R. App. P. 13(d) when reviewing an order granting a summary judgment. *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Estate of Kirk v. Lowe*, 70 S.W.3d 77, 79-80 (Tenn. Ct. App. 2001). Rather, we determine for ourselves whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001). In this process, we must consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in the nonmoving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001). Non-moving parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

### III.
### THE APPLICATION OF TENN. DEP'T CORR. POLICY INDEX NO. 502.02

Mr. Rooker's principal argument on appeal is that the Department misconstrued and misapplied its own policy by extending the cumulative release date applicable to his three consecutive sentences. He insists that the Department should have extended the release eligibility date for only the 12-year sentence he was serving when he escaped. According to Mr. Rooker, the Department should not have altered the release ineligibility periods for his two consecutive sentences for second degree murder and attempted prescription forgery.

Tenn. Code Ann. § 40-35-501(c) (1997) provides that Range I standard offenders like Mr. Rooker will ordinarily be eligible for release from incarceration to parole "after service of thirty percent of the actual sentence imposed less sentence credits earned and retained." That release eligibility date, however, is not absolute. It is conditioned on the prisoner's good behavior while in prison. Tenn. Code Ann. § 40-35-501(k). If an offender escapes while incarcerated, his or her release eligibility date is pushed back "so as to increase the total amount of time an inmate must serve before becoming eligible for parole." Tenn. Code Ann. § 40-35-501(k).

For disciplinary infractions such as escape, the Tennessee General Assembly has delegated to the Commissioner of Correction discretion to promulgate regulations to lengthen the amount of

time a prisoner must serve before becoming parole eligible. Tenn. Code Ann. § 40-35-501(k). The Department's regulation on that subject, Tenn. Dep't Corr. Policy Index No. 502.02, provides:

> In all cases in which an inmate is found guilty of the disciplinary offense of escape, including escape from custody and failure to return from a pass or furlough, in addition to any other punishment imposed, the offender's parole or release eligibility date shall be extended by adding thereto an additional twenty percent (20%) of the offender's original maximum sentence, or by extending the inmate's parole or release eligibility date to the sentence expiration date, whichever is less.

In the simplest case – where a prisoner is serving a single sentence for one offense – the application of the Department's regulation punishing escape is straightforward. In that circumstance, the prisoner has one sentence with its accompanying release eligibility date which the Department can push back by twenty percent. But what about when a prisoner is serving multiple consecutive sentences? As a matter of law, the prisoner is not serving all those sentences simultaneously but rather is serving them one at a time in series. *Kay v. United States*, 279 F. 2d 734, 735 (6th Cir. 1960). Under consecutive sentencing the prisoner serves the appropriate amount of time on each sentence and then begins to serve the next sentence until all the consecutive sentences have been served. *Howell v. State*, 569 S.W.2d 428, 431-32 (Tenn. 1978).

Even under consecutive sentencing, though there may be multiple sentences, there is only one release eligibility date. A prisoner's release eligibility date is the earliest date that he or she will be eligible for release or parole as determined by time served and any sentence credits. Tenn. Code Ann. § 40-35-501(k); Tenn. Dep't Corr. Policy Index No. 505.01(IV)(L) (2001). A prisoner serving consecutive sentences is not eligible for early release until he or she has served the required amount of time on all of the separate sentences. Good behavior may give a prisoner a head start on beginning the next consecutive sentence; however, even in that case, no release from custody can occur until after completion of an appropriate amount of time on the last consecutive sentence. Accordingly, Tenn. Code Ann. § 40-35-501(j) expressly provides that for consecutive sentences, the periods of ineligibility for release are calculated for each sentence then added together to establish the "release eligibility date for the consecutive sentences."

Under the Department's policy, it is the "release eligibility date for the consecutive sentences" that shall be extended as punishment for escape. That is exactly what the Department did here. Counting Mr. Rooker's original 12-year sentence, as well as his subsequent consecutive 20-year and 1-year sentences, he started out with an effective sentence of thirty-three years to be served at thirty percent before he would become release eligible. After convicting Mr. Rooker of the disciplinary offense of escape, the Department lengthened his release eligibility date by twenty percent. Consequently, he must serve fifty percent of his thirty-three years before he will be eligible for parole from custody.[2]

---

[2]Mr. Rooker may, of course, reduce even this time through earning sentence reduction credits.

The Department's actions in this case follow both the language and the obvious intent of Tenn. Dep't Corr. Policy Index No. 502.02. Therefore, we reject Mr. Rooker's argument that the Department should have extended his ineligibility for release only on his original 12-year sentence. Mr. Rooker's release eligibility date was not pegged just to that sentence; it was a function of his total effective sentence which included his other consecutive sentences for second degree murder and attempted prescription forgery. Accordingly, we affirm the trial court's judgment for the Department.[3]

## IV.
### THE ALLEGED BREACH OF THE PLEA BARGAIN AGREEMENT

Mr. Rooker also insists that the Department violated the State's plea agreement by extending his parole eligibility date. This argument is just plain wrong. When Mr. Rooker entered his plea agreement on the second degree murder charge, he was on notice that his release eligibility date was conditioned on good behavior and that it could be deferred for violation of prison rules. Tenn. Code Ann. § 40-35-501. The State is under no obligation to spell out to criminal defendants all the possible consequences of misbehavior behind the walls. The Department unquestionably has the authority to extend a prisoner's release eligibility date for violation of disciplinary rules. As long as the Department's action does not lengthen the sentence itself, the Department's decision to extend a prisoner's release eligibility date does not violate a plea bargain agreement. *Britt v. Campbell*, M2000-01423-COA-R3-CV, 2001 WL 605104, at *2-3 (Tenn. Ct. App. June 5, 2001), *perm. app. denied* (Tenn. Oct. 29, 2001); *Smith v. Campbell*, 995 S.W.2d 116, 117-19 (Tenn. Ct. App. 1999); *Taylor v. Reynolds*, 914 S.W.2d 516, 518 (Tenn. Ct. App. 1995); *Rowland v. Bradley*, 899 S.W.2d 614, 615 (Tenn. Ct. App. 1994).

## V.
### THE ALLEGED DEPRIVATION OF SENTENCE REDUCTION CREDITS

As a final matter, Mr. Rooker asserts that the Department removed some of his sentence reduction credits when it punished him for escaping. The record refutes that contention. While the prison disciplinary committee's judgment document shows that the committee recommended extending Mr. Rooker's release eligibility date, it shows just as clearly that the board did not recommend taking away any of his sentence reduction credits. The Department's March 1999 response to Mr. Rooker's request for a declaratory order confirmed that it had not reduced his sentence reduction credits. The Department wrote:

> A record verification by Sentence Information Services (SIS) personnel reveals that *no* credits were removed due to the Escape felony. The only adjustment was an extension of the Release Eligibility Date (RED) by 20%. In addition, case # 8405661 and case # 8705339 were extended by 20% as well due to escape.

---

[3] We may affirm on different reasoning than that relied on by the trial court. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 612 n.5 (Tenn. Ct. App. 1990).

The 62 Prisoner Performance Sentence Credits (PPSC) and 491 Prisoner Sentence Reduction Credits (PSRC) were credited to cases # 8405660, # 8405661 and # 8500938 on 4/1/85.

Finally, case # 8705339 is consecutive to #8405661 and begins at Expiration (EXP) which was 5/14/94. Also, 896 PSRC and 309 Pretrial Jail Credits (PTJC) have been applied to your sentence calculation. Thus, your current sentence structure is valid and correct.

Mr. Rooker essentially asserts that the Department's calculation must be "flawed" because the sentence expiration date for his original 1984 concurrent sentences plus his two subsequent consecutive sentences does not seem mathematically correct to him. He also points out that the Department has provided him with three different sentence summaries containing a different expiration date for his 33-year effective sentence.

The difference in the sentence summaries, without more, is not prima facie evidence that the Department has removed or withheld or miscalculated or misapplied Mr. Rooker's sentence credits. These were prepared at different times. In fact, two of them were generated nine years apart. Over time, Mr. Rooker has been earning sentence credits, and those credits have had the effect of hastening his sentence expiration date. Tenn. Code Ann. § 41-21-236(b) & (j) (1997); *Rowell v. Dutton*, 688 S.W.2d 474, 476 (Tenn. Crim. App. 1985). The sentence summaries show different sentence expiration dates because they reflect the different amounts of sentence credits Mr. Rooker had earned during his incarceration. Mr. Rooker must point to something else to create a dispute of fact precluding summary judgment on this issue.

Under the heading "Precise Relief Sought," Mr. Rooker asks this court to "restore (421) sentence reduction credits to the Appellant's sentence summary." This record provides us with no basis for finding that he has been deprived of any of his sentence reduction credits. We accordingly affirm the trial court's dismissal of this part of Mr. Rooker's declaratory judgment complaint.

## IV.

We affirm the judgment dismissing the petition for declaratory judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Charles Wayne Rooker for which execution, if necessary, may issue. We also find that Mr. Rooker's complaint and subsequent appeal are frivolous in accordance with Tenn. Code Ann. § 41-21-807(c) (Supp.2002) and Tenn. Code Ann. § 41-21-816(a)(1) (1997).

_____
WILLIAM C. KOCH, JR., JUDGE