# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 11, 2000 Session

## AMERICAN NATIONAL PROPERTY & CASUALTY COMPANIES v. JAMES E. ROBERTS, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 98-2451-III    Ellen H. Lyle, Chancellor

---

### No. M1999-01572-COA-R3-CV - Filed December 19, 2002

---

This appeal involves a coverage dispute between the driver of a rented van and his insurance company. Following a single-vehicle accident that killed one passenger and injured two others, the driver's insurance company denied coverage because the driver was not operating the van with its owner's permission. Thereafter, the insurance company filed a declaratory judgment action in the Chancery Court for Davidson County. The trial court denied the insurance company's motion for summary judgment after concluding that the term "owner" as it appeared in the policy was ambiguous. Thereafter, the trial court granted the driver's motion for summary judgment after concluding, as a matter of law, that he had been operating the rented van with the owner's permission. We have determined that the trial court should not have granted the driver a summary judgment because the record contains material factual disputes regarding whether the driver was operating the rented van with the owner's permission.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

WILLIAM C. KOCH, JR., J. delivered the opinion of the court in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Alan M. Sowell, Nashville, Tennessee, for the appellant, American National Property and Casualty Companies.

Keith Jordan, Nashville, Tennessee, and J. Thomas Smith, Franklin, Tennessee, for the appellee, James E. Roberts.

Michael P. Dolan, Nashville, Tennessee, for the appellee, Stephen E. Spittle.

Harry A. Wilson, Jr., Indianapolis, Indiana, and Phillip B. Jones, Nashville, Tennessee, for the appellees, Donald R. Yeoman and Janice M. Yeoman.

Larry L. Crain, Brentwood, Tennessee, for the appellee, Jeffrie Todd White.

Shelley I. Stiles, Brentwood, Tennessee, for the appellee, Mike Keil & Associates.

James D. Kay, Jr. and Matthew Brothers, Nashville, Tennessee, for the appellee, George Durnin & Assoc., Inc., d/b/a Tennessee Car & Van Rental.

**OPINION**

**I.**

In the late 1990s, James Roberts and his younger brother, Jonathan Roberts, were members of a Christian rock band called "Shaded Red." The two other members of the band were Chris Yeoman and Stephen Spittle. The band was managed by Mike Keil and Associates of Brentwood, Tennessee and also had a recording contract with Cadence Records of Nashville. The band toured extensively, frequently using rented vans.

Not long after the release of Shaded Red's first recording, their manager scheduled a series of concerts in the Midwest. Arrangements were made with Tennessee Car and Van Rental Company of Franklin to rent a van for the trip. When James and Jonathan Roberts arrived at the rental agency to pick up the van on January 14, 1998, Jacquelyn Cain, the employee on duty, informed them that "there was a problem with the reservation."[1] James Roberts then got word to Mr. Keil that they were having problems renting the van. Mr. Keil instructed Jeffrie White, one of his employees, to take care of the problem.

Mr. White telephoned Tennessee Car and Van Rental and was told that the agency's insurance policy would not cover the Roberts brothers because they were under twenty-five years old. After being told that someone else would have to rent the van, Mr. White drove to the rental agency and rented the van in his own name. Mr. White thereafter drove the van to a nearby service station where he turned over the keys to James Roberts. Thereafter, the Roberts brother and the other members of Shaded Red drove off in the van for their Midwest engagements.

On January 17, 1998, while driving through Missouri, James Roberts lost control of the van in snow and ice causing a serious one-vehicle accident. Jonathan Roberts and Stephen Spittle were injured, and Chris Yeoman was killed. Facing claims by or on behalf of the passengers in the van, James Roberts called upon his personal automobile insurance company, American National Property and Casualty Company ("American National") to provide coverage and a defense. American National denied coverage on the ground that Tennessee Car and Van Rental had not given him permission to drive the van. Thereafter, it filed a declaratory judgment action in the Chancery Court for Davidson County to obtain a judicial determination of its rights and obligations under its insurance policy.

Following discovery, American National moved for a summary judgment asserting that James Roberts was not an "insured person" under its policy because at the time of the accident, he was driving a non-owned car without the owner's permission. This argument was premised on the undisputed facts that Tennessee Car and Van Rental had declined to rent the van to either James or

---

[1]Ms. Cain asserts that she informed James Roberts that the company would not rent the van to persons under twenty-five years old. At the time, James Roberts was twenty-three years old, and Jonathan Roberts was twenty-one. Rather remarkably, James Roberts asserts that he was unaware of the nature of the "problem" and that he made no effort to find out what the problem was.

Jonathan Roberts and had rented the van to Jeffrie White. The trial court declined to grant American National's summary judgment motion after concluding that the term "owner" as it appeared in the insurance policy was ambiguous. To reach this decision, the court must have determined that Mr. White could have been considered the "owner" of the van and that if Mr. White had given James Roberts permission to drive the van, then James Roberts had the owner's permission to drive the van for the purposes of American National's policy.

Thereafter, James Roberts filed his own summary judgment motion on the coverage issue. He acknowledged that he could be covered by the policy only if he was driving the van with its owner's permission, but he asserted that he thought he had the owner's permission to drive the van. The trial court granted James Roberts's motion and determined as a matter of law that American National's policy covered him while he was driving the van in Missouri. American National has appealed the trial court's interpretation of its policy to this court.

## II.
### THE STANDARD OF REVIEW

Granting a summary judgment is warranted in virtually any civil case, including declaratory judgment actions to construe insurance contracts,[2] where the moving party demonstrates that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Armoneit v. Elliott Crane Serv.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). Because a summary judgment involves an issue of law rather than an issue of fact, *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002), an order granting a summary judgment is not entitled to a presumption of correctness on appeal. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

Appellate courts do not employ the standard of review in Tenn. R. App. P. 13(d) when reviewing an order granting a summary judgment. *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Estate of Kirk v. Lowe*, 70 S.W.3d 77, 79-80 (Tenn. Ct. App. 2001). Rather, we determine for ourselves whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001). In this process, we must consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in the nonmoving party's favor. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

Litigants may use a motion for summary judgment to challenge their adversaries to put up or shut up on a critical issue in a case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). A moving party will be entitled to a summary judgment if it can demonstrate that the non-moving party will be unable to prove an essential element of its case on which it will bear the burden of proof at trial. *Byrd v. Hall*, 847 S.W.2d 208, 213 (Tenn. 1993); *Solomon v. FloWarr Mgt., Inc.*, 777 S.W.2d 701, 706 (Tenn. Ct. App. 1989). Customarily, defendants employ this strategy either to negate an essential element of the plaintiff's claim or to establish an affirmative defense to the

---

[2]*Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147-48 (Tenn. Ct. App. 2001).

plaintiff's claim. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001).

Once a party seeking a summary judgment demonstrates that its motion complies with the requirements of Tenn. R. Civ. P. 56, the burden of going forward shifts to the non-moving party to demonstrate either that material factual disputes exist or that the moving party is otherwise not entitled to a judgment as a matter of law. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d at 905. Mere conclusory allegations will not suffice to create a material factual dispute. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001). Non-moving parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Davis v. Campbell*, 48 S.W.3d 741, 747-48 (Tenn. Ct. App. 2001). A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim or defense because, as our courts have repeatedly observed, the failure of proof concerning an essential element of a case renders all other facts immaterial. *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

A summary judgment is not appropriate when a case's determinative facts are in dispute. Thus, courts reviewing an order granting a summary judgment must determine whether factual disputes exist and whether these disputes are material to the claim or defense implicated by the summary judgment motion. *Byrd v. Hall*, 847 S.W.2d at 214; *Cantrell v. DeKalb County*, 78 S.W.3d at 905-06. For a question of fact to exist, reasonable minds must be able to differ over whether some alleged occurrence or event did or did not happen or whether a particular condition did or did not exist. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Davis v. Campbell*, 48 S.W.3d at 747. If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 655 (Tenn. Ct. App. 1993). If, on the other hand, the evidence and the inferences to be reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then there are no material factual disputes and the question can be disposed of as a matter of law. *Webber v. State Farm Mut. Ins. Co.*, 49 S.W.3d at 269; *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999).

Not all factual disputes warrant denying a motion for summary judgment. Many factual disputes have no bearing to the ultimate outcome of the parties' dispute. Thus, factual disputes warrant denying a motion for summary judgment only when they are material. Tenn. R. Civ. P. 56.04 (requiring the moving party to demonstrate "that there is no genuine issue as to any material fact"). A factual dispute is material for the purposes of Tenn. R. Civ. P. 56 if it must be decided in order to resolve the substance of the claim or defense being tested by the summary judgment motion. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Byrd v. Hall*, 847 S.W.2d at 215; *Chambers v. City of Chattanooga*, 71 S.W.3d 281, 284 (Tenn. Ct. App. 2001).

# III.
## THE INTERPRETATION OF AMERICAN NATIONAL'S POLICY

American National asserts that the trial court misinterpreted its policy's coverage when its insured is operating a non-owned vehicle. Coverage exists only when the insured is operating the vehicle with its owner's permission. American National insists that the term "owner" includes only the record owner of the vehicle and cannot be interpreted to include persons who are leasing or renting the car from the owner. We disagree.

### A.

Insurance policies are subject to the same rules of construction that are used to interpret other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d at 148. As with other contracts, courts must give effect to the parties' intentions as reflected in the policy. *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995); *Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). The insurance policy should be construed as a whole in a reasonable and logical manner. *English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998).

Courts must stay strictly neutral in declaring the parties' rights and liabilities under an insurance contract. We should interpret the policy as written, and we should give the policy's terms their natural and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986). The insuring agreement defines the outer limits of an insurance company's contractual liability. *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d at 7. Courts are not at liberty to rewrite an insurance policy solely because they might not favor its terms, *Black v. Aetna Ins. Co.*, 909 S.W.2d at 3, and they must avoid forced constructions that render a particular provision ineffective or that extend a particular provision beyond its intended scope. *Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991). In deciding insurance coverage issues, it is not our role to impose our views of how things should or should not be; our duty is to enforce the policy as written. *Spears v. Commercial Ins. Co.*, 866 S.W.2d 544, 548 (Tenn. Ct. App. 1993).

### B.

Most automobile insurance policies define the scope of their coverage in two ways. First, they limit coverage to an "insured person," usually the policyholder and the members of his or her household. Second, they restrict coverage to a "covered vehicle." *See generally* Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 4.9 (Practitioner's ed. 1988); Ralph Nadar & Wesley Smith, *Winning the Insurance Game* 83-84 (1990). These two limitations affect the pricing of insurance policies in separate ways. Considerations of who will qualify as an "insured person" explain why drivers with bad records usually pay more. "Covered vehicle" concerns explain why insurance is usually higher on a new Jaguar than on a ten-year-old Dodge. This case requires us to focus on the "insured person" risk component of American National's automobile policy.

The term "insured person" does not carry just one settled meaning under American National's policy. Who may be an "insured person" varies throughout the policy and depends on the specific

coverage at issue. By varying the definition of "insured person," American National has tailored the risks it is willing to underwrite to encompass only certain people in certain foreseeable loss situations. The loss situation involved here was loss occurring while the policyholder was driving someone else's vehicle.

The parties agree that this exact question falls under the "Liability" section of American National's policy. According to the definitions in that section applicable to non-owned vehicles, an "insured person" includes the policyholder or a relative, "provided the use [of the vehicle] is with the permission of the owner, and within the scope of such permission." American National contends that Tennessee Car and Van Rental owned the van and that Tennessee Car and Van Rental gave permission only to Mr. White, its lessee, to operate the van. James Roberts counters that in the absence of a definition of "owner" in the policy, "owner" is expansive and flexible enough to include not just a vehicle's owner of record but also persons who lease or rent the vehicle from the owner of record.

It is undisputed that Tennessee Car and Van Rental was the owner of record of the van. However, this fact is not outcome dispositive. For certain coverage issues, the holder of a vehicle's title may not always be deemed its "owner," especially when possession of the vehicle has been transferred under circumstances that prevent the owner of record form controlling the vehicle's use by giving or withholding consent about who drives it. *Cowles v. Rogers*, 762 S.W.2d 414, 417 (Ky. Ct. App. 1988).

In this case, Tennessee Car and Van Rental attempted to place restrictions on the use of the van in the boilerplate language on the back of its rental agreement.[3] However, as the facts of this case demonstrate, these provisions did little good in terms of actually controlling the use of the van. In theory Tennessee Car and Van Rental retained the right of control over the vehicle. However, as the facts of this case demonstrate, once Tennessee Car and Van Rental turned the van over to Mr. White, it effectively lost control over who drove the van. It is undisputed that all of the members of Shaded Red had driven the van after it left Tennessee Car and Van Rental's premises.

A proper understanding of the scope of the term "owner" with regard to coverage for insured persons driving non-owned vehicles can be derived from the purpose for including non-owned vehicle clauses in automobile insurance policies. Insurers do not include non-owned vehicle clauses in their contracts to force their insureds to ascertain the legal ownership of any borrowed or rented vehicle they might drive. Rather, as the Washington Court of Appeals has pointed out:

> The nonowned vehicle clause is intended to protect the insured on those infrequent occasions when he [or she] is driving other people's vehicles which might not be insured. The permission requirement of the non-owned vehicle clause operates to deny coverage to an insured who steals another's automobile, or knowingly uses it without consent. Under such circumstances, it can be presumed that the insured will not operate the other vehicle with the same degree of care as was anticipated by the insurer when it issued

---

[3]The rental agreement contained a provision prohibiting use of the vehicle (1) by anyone without the lessor's written consent or (2) by anyone under twenty-five years old.

-6-

the policy. The same cannot be said when the insured honestly but mistakenly believes he or she is driving with the consent of the owner; both insurer and insured recognize the insured's need for protection under such circumstances. Since the insurer is familiar with the insured and can factor a degree of risk into its policy premiums, a more liberal interpretation of "permission" and "owner" is appropriate. The intent of the contracting parties is reflected in an approach which focuses on the state of mind of the driver. The relevant inquiry is whether the driver reasonably believed that consent had been given by one able to give it.

*Robinson v. Pemco Ins. Co.*, 862 P.2d 614, 618-19 (Wash. Ct. App. 1993) (citations omitted).

A non-owned vehicle clause manifests an insurer's apprehension about providing coverage to a person who commits the questionable act of knowingly driving someone else's car without that person's permission. It reflects the insurance industry's attempt to quantify its risk based on the insured's likely responsibleness. The clause was added to automobile policies industry-wide in the aftermath of two cases in which the insureds were held liable under the non-owned vehicle provisions of their policies after their children had accidents in stolen cars.[4] Thereafter, insurers inserted language in their policies conditioning coverage for non-owned vehicles on the requirement that the non-owned vehicle was being driven with the owner's permission. The requirement was designed specifically to withdraw coverage where an automobile was stolen or where the insured had reason to know that he or she lacked permission from the title owner to drive a vehicle. *Farmers Ins. Co. v. USF & G Co.*, 537 P.2d 839, 842 (Wash. Ct. App. 1975).

Our holding in this case is limited to the use of the term "owner" in non-owned vehicle clauses that condition coverage on "permission of the owner." In this narrow context, we agree with the trial court that the term "owner" should not be limited solely to the record owner of the vehicle. As another court has noted, "[t]o hold otherwise would necessitate inquiry concerning who was the [legal] owner each time the car of another was driven . . . . One could never have the secure knowledge he [or she] was driving with permission of the owner. [A driver] would always be driving the car of another at his [or her] peril." *GEICO v. Kinyon*, 173 Cal. Rptr. 805, 810 (Ct. App. 1981). Thus, a person renting or leasing a vehicle may, in proper circumstances, have the same status as the owner of record, at least insofar as giving permission to others to drive the vehicle is concerned. *Allstate Ins. Co. v. Condon*, 243 Cal. Rptr. 623, 625 (Ct. App. 1988). Accordingly, we concur with the trial court's conclusion that Tennessee Car and Van Rental was not the only entity who could have given James Roberts permission to drive the van. Jeffrie White, as the person renting the van from Tennessee Car and Van Rental, could also have given James Roberts permission to drive the van.

---

[4] *Home Indem. Co. v. Ware*, 285 F.2d 852 (3rd Cir. 1960); *Sperling v. Great Am. Indem. Co.*, 166 N.E.2d 482 (N.Y. 1960).

## IV.
### THE MATERIAL FACTUAL DISPUTES AFFECTING COVERAGE

This coverage dispute cannot end with the conclusion that Mr. White's authorization to drive the van could amount to "permission of the owner" for the purpose of the non-owned vehicle coverage in American National's policy. Even if Mr. White authorized James Roberts to drive the van, Mr. Roberts cannot be an "insured person" under American National's policy if he actually knew that Tennessee Car and Van Rental had declined to give him permission to drive its van. The testimony in this record contains genuine, material factual disputes regarding this question.

### A.

To have coverage under the non-owned vehicle clause of his or her own policy, the insured must reasonably believe that he or she had the owner's permission to drive the non-owned vehicle. *GEICO v. Kinyon*, 173 Cal. Rptr. at 810; *cf. Tennessee Farmers Mut. Ins., Co. v. Moore*, 958 S.W.2d 759, 766-67 (Tenn. Ct. App. 1997) (finding coverage where the second permittee driving a vehicle had no reason to know that the first permittee was not supposed to allow other drivers). If, as a factual matter, an insured actually knows that he or she has no permission from the vehicle's owner, or if an insured has knowingly participated in deceiving the owner to get possession of the vehicle, there is no coverage. The question of whether an insured reasonably believes that he or she had the owner's permission to drive a vehicle is a question of fact. *Teague v. Tate*, 213 Tenn. 269, 279, 375 S.W.2d 840, 844 (1964); *Allstate Ins. Co. v. Stewart*, No. 02A01-9111-CH-00282, 1992 WL 58502, at *1 (Tenn. Ct. App. March 27, 1992) (No Tenn. R. App. P. 11 application filed).

### B.

The evidentiary record in this case consists of the complete or partial depositions of James Roberts, Jonathan Roberts, Mike Keil, Jeffrie White, and Jacquelyn Cain. Each of these persons gave an individual account of the events that occurred on January 14, 1998 at Tennessee Car and Van Rental's premises. Mr. Keil had only minimal involvement with the transaction, and his testimony is not pivotal. He testified that his company had rented a vehicle for the band's use on one prior occasion and that all band members had driven that van. He also confirmed that he had instructed Mr. White to take care of the "trouble" with the rental of this van, but he added that he did not talk about the specifics of the problem with either James Roberts or Jonathan Roberts on January 14, 1998.

Mr. White testified that Mr. Keil had called him "to go see if [he] could sort the problem out." He also confirmed that Mr. Keil's company had previously arranged for the band's ground and air transportation. Mr. White testified that a Tennessee Car and Van Rental employee told him that the agency's insurance would not cover James or Jonathan Roberts and "that somebody else would have to get the van." Mr. White testified that he decided to rent the van after James and Jonathan Roberts told him that their own automobile insurance policy would cover them while driving a rented vehicle. According to Mr. White, he took the initiative of solving the problem, and neither James nor Jonathan Roberts asked him expressly to rent the van in his name. Mr. White noted, "[S]omebody else was going to have to rent the van if they [Shaded Red] were going to be able to get the van, you know."

Mr. White's testimony lends itself to the conclusion that he believed that the difficulty James and Jonathan Roberts were having renting the van on January 14, 1998 had to do with insurance. He testified, "[w]hat I understood was that their [the rental agency's] insurance wouldn't cover these drivers," and that he "told the van company that [he] would rent it [the van] for them [Shaded Red]." He also testified that James Roberts understood that the rental agency had declined to permit him to pick up the van because its insurance policy would not cover him because he was under twenty-five years old. Mr. White testified that James Roberts "knew the situation" of why he could not rent the van.

Jacquelyn Cain's account of the events of January 14, 1998 differs from the accounts of James Roberts and Mr. White. She testified that she discovered that James Roberts was under twenty-five years of age when she was filling out the rental papers. Realizing she had a problem, she contacted her manager, who instructed her to ask James Roberts if anyone else "going on their trip" would be over twenty-five years old. She insisted that Mr. White assured her that he was over twenty-five years old and that he was going on the trip. She also testified that she told Mr. White that no one under the age of twenty-five could drive the van and that Mr. White assured her that he would be the only driver.

James Roberts testified in his deposition that "[t]hey [the management company] would make the arrangements [for transportation], and we would go pick the vans up. That's how it worked." He testified that on January 14, 1998, "I went with my brother to get the van, and somebody there said there was a problem with our reservation . . . ." According to Mr. Roberts, the van rental company was not specific about the problem: "The guy just says, there's a problem with your reservation, wasn't terribly specific." When asked specifically whether the matter of age was ever discussed with him while he was trying to rent the van, Mr. Roberts answered, "I do not believe that the person I spoke to made a specific thing to me of the age."

When asked whether Mr. White ever talked to him about age being an issue in the rental, James Roberts replied, "What I remember is that he [Mr. White] told me he would take care of it. I can't remember every exact specific or whether he exactly said, well, it's probably this. What I remember is what he said was he would take care of it and we trusted him that he would . . . they take care of us, that's their job, and I - - I trust these people." He testified that he had previously driven a van that someone else had rented and that he "assume[d] it's legal."

Based on this evidence,[5] a material factual dispute exists regarding whether James Roberts believed in good faith that Tennessee Car and Van Rental had given him permission to drive the van. This factual dispute can be resolved only by a trial on the merits. Accordingly, the trial court erred by determining as a matter of law that James Roberts was an "insured person" under his American National policy because Mr. White had given him permission to drive the rented van. James Roberts cannot be considered as an "insured person" if he knew that Tennessee Car and Van Rental had refused to permit him or any other driver under twenty-five years of age to drive the van.

---

[5]We have not summarized Jonathan Roberts's deposition testimony because it contains no specifics regarding the problem with renting the van. He claims that he waited for his brother outside the office and that his brother did not tell him any of the specifics.

**V.**

We reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal against James E. Roberts for which execution, if necessary, may issue.


_____
WILLIAM C. KOCH, JR., JUDGE